No. 15,496.

MILLAGE ET AL. *v.* SPAHN ET AL.

(175 P. [2d] 982)

Decided November 25, 1946.    Rehearing denied December 23, 1946.

Mr. T. E. MUNSON, for plaintiffs in error.

Mr. WILLIAM B. PAYNTER, Mr. BEN L. GARMAN, for defendants in error.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

THIS case involves a contest between landlord and tenant over "away-going" crops. In a jury trial, after the plaintiff tenant had rested, the trial court, on motion of the defendant landlord, entered judgment dismissing the case at plaintiff's costs. The tenant, as plaintiff in error, brings the case here for review.

The crop involved was fall wheat, planted by the tenant in the first days of September, 1942, on land that had been summer-fallowed. Notice was served on the tenant by the landlord to quit on or about September 23, 1942. The following spring a new tenant, who had displaced plaintiff, plowed up or grazed some of the wheat plaintiff had planted, and the landlord reaped the wheat from another portion of the land that plaintiff had sown, and received $2,728.45 net for it.

The tenant contends that section 4, subdivision third, and section 5, chapter 70, '35 C.S.A. (S.L. '85, page 224, section 4; R.S. '08, section 2604; C.L. c. 21, section 6370) govern this case. These sections read as follows:

"§4. Any person shall be deemed and held guilty of an unlawful detention of real property in the following cases:

\* \* \*

"Third — When any lessee, or tenant, at will, or by sufferance, or for any part of a year, or for one or more

years, of any real property, including a specific or undivided portion of a building, or dwelling, shall hold over, and continue in possession of, the demised premises, or any portion thereof, after the expiration of the term for which the same were leased, or after such tenancy, at will or sufferance, has been terminated by either party."

"§5. In all cases arising under subdivisions three (3) to nine (9), inclusive, of the preceding section, the person in possession shall be entitled to cultivate and gather the crops, if any, planted or sown by him previous to the service of the demand to deliver up possession, and then grown or growing on the premises; and shall have the right to enter such premises for the purpose of cultivating or removing such crops, first paying or tendering to the party entitled to the possession of said premises a reasonable compensation for such use of the land before removing such crops."

The landlord contends that the following facts make the statute inapplicable to this case: The tenant had rented the land continuously, beginning with the year 1936, at which time he entered into a written lease with the then owner—not the present landlord—for the years 1936 and 1937; that this lease contained a provision that the tenant would not plant fall crops in the fall of 1937 without the landlord's written consent; that subsequent to 1937 there was no written lease, but the tenant held over from year to year on the terms of the original lease, and therefore was bound, each year after 1937, to obtain written permission to plant fall crops which would mature the following spring or summer. The record shows that in 1940 the ownership of the property in question changed, and defendant became the landlord. No written lease was ever executed between the present landlord and the tenant; however there was a verbal agreement as to the amount of rent in 1940, when the new landlord took over, under which the landlord's

share of the crop, which originally had been one-fourth, was increased to one-third.

Defendant's motion to dismiss was based upon eight grounds. The trial court, in its findings, held that the only basis for dismissing the case was, "That under the terms of said leasing, as shown by the original leases, and which terms the plaintiff alleges continued, no fall crops were to be planted, or no crops were to be planted in the fall, without the consent of the lessor, and no consent of the lessor has been shown in this case."

█ The right of ownership in emblements — crops that are unharvested at the time of the termination of a lease — it seems, in the absence of statute, is to be determined by the character of the lease. If it was for an indefinite term and was terminated by act of God, or by operation of law, or by the lessor, then the lessee was entitled to take, provided he asserted his rights with due diligence; on the other hand, "Where the tenancy is fixed and certain, that is, where the tenant knows when he sows crops precisely when the lease will end, and it is plain that he cannot reap before the lease terminates, he has no right to the crops remaining unharvested, or at least not to those that do not mature until after the termination of the lease." 141 A.L.R. 1241. The foregoing common-law rule has been modified by statute in many states and, as noted above, a statute in Colorado definitely is applicable to tenancies from year to year. It is admitted by opposing counsel that the tenancy in existence when the controversy arose in the instant case was a tenancy from year to year. The Colorado statute therefore is applicable, and under it the tenant had the right to the "away-going" crops, unless there was a specific agreement which provided otherwise.

Counsel for the landlord relies upon the two-year written lease between the tenant and a former owner covering the years March 1, 1936 to March 1, 1938, which lease contained the written provision, "that no crops are

to be planted in the fall of 1937 without first obtaining the written consent of first party [landlord]." It is argued that when the tenant held over the subsequent year (1938-39) his tenancy was subject to all of the applicable terms of the original written lease, and that these terms were continuously applicable when he held over from year to year, except as to the amount of rent which was increased in 1940 when ownership was transferred from the original lessor to defendant landlord, Tenant's evidence showed that the provision, that he should first obtain consent in writing from the lessor before planting crops in the fall of 1937, was not observed, nor did he in any subsequent fall ever receive consent in writing to plant fall crops—either from the original lessor or from his present landlord. His counsel accordingly asserts that the provision that the lessee should obtain written consent to plant crops in the fall of 1937 was waived for that year and for all subsequent years; he further contends that the present landlord is estopped from setting up the necessity for this written consent for the reason that in July 1942 he visited the land under lease, at which time the lessee sought him out and stated that he desired to lease for another year and was intending to plant fall wheat; whereupon the landlord stated that he was making a change of the agent who would represent him in handling the place and that he (the tenant) would have to talk to the new agent, who was named; that the landlord did not tell the tenant that he was intending to change tenants, as well as agents, with the result that the tenant made the plantings in the first days of September, 1942, and was not notified to quit until September 23, after the planting had been completed.

It may be that the original landlord, subsequent to the time the written lease was executed, waived the necessity for the obtaining by lessee of written permission before planting fall crops, and that this waiver would be effective as binding the subsequent landlord.

We pass this point because it would seem that the present landlord did not, and could not, waive the necessity of lessee's obtaining such written permission, for the reason that the pleadings show that the landlord in his answer denies any written lease and does not rely upon one. "Waiver is the intentional abandonment of a known right, not a trick to catch one napping." *McKee v. McGhee,* 114 S.C. 183, 103 S.E. 508. See, also, 44 Words and Phrases (Permanent ed.) 518, et seq. "A waiver in any case is really implied consent by a failure to object." *Roseberry v. Valley Building & Loan Ass'n,* 17 Colo. App. 448, 68 Pac. 1063. The record seems to indicate that neither the landlord nor his counsel knew of the existence of any written lease until the case came on for trial. This contention that a waiver existed, would be the same as saying that one can waive a right which he does not know exists.

■ ■ But by the same token, if defendant landlord did not know of the existence of the original written lease and of the provision that the lessee must obtain written permission from the lessor before planting fall crops, it was his duty, if he was intending to terminate the lease in the fall of 1942, not to allow the tenant to proceed under any assumption that he might again be holding over for another year. This ·became especially his duty when tenant informed him in July that he was planning to put in a fall crop. On this motion to dismiss, the evidence must be construed, in case of doubt, in favor of plaintiff tenant. So construing, we believe that the landlord was estopped from asserting that it was tenant's duty first to obtain a written consent from the lessor before planting fall crops. "The general rule that a tenant for a definite term has no right to unharvested crops maturing after the expiration of his lease may be modified by estoppel arising against the landlord claiming the "away-going" crops. *Smith v. Frantz* (1915) 59 Ind. App. 260, 109 N.E. 407; *Carmine v. Bowen* (1906) 104 Md. 198, 64 A. 932, 9 Ann. Cas. 1135; *Reeder v. Sayre*

(1877) 70 N.Y. 180, 26 Am. Rep. 567; *Francis Bros. v. Schallberger* (1931) 137 Or. 529, 3 P. (2d) 530, 83 A.L.R. 108; *Griffiths v. Tombs* (1833) 7 Car. & P. 810, 173 Eng. Reprint 353." 141 A.L.R. page 1256.

Estoppel was not pleaded in this case, and its existence became apparent only after the evidence was introduced. It was thereupon duly urged by tenant's counsel.

■ We are of the opinion that the Colorado statute above quoted is applicable under the facts disclosed in the case. The spirit of this statute is in accord with the statement in 141 A.L.R., page 1244, "The courts seek to promote and encourage husbandry, and consequently favor wherever possible the tenant who sowed crops as against the landlord or other persons claiming such crops at the termination of the tenant's lease. The basis of the doctrine of emblements, supra, is stated in the following cases to be the justice of assuring to the tenant compensation for his labor and the desirability of encouraging husbandry as a matter of public policy. [numerous cases cited]"

Among cases from this jurisdiction, landlord's counsel cite: *Hallett v. Barnett,* 51 Colo. 434, 118 Pac. 972; *Zippar v. Reppy,* 15 Colo. 260, 25 Pac. 164; *Sears v. Smith,* 3 Colo. 287; *Hurd v. Whitsett,* 4 Colo. 77. He also lays great stress upon, and quotes at length from, *Anderson v. Cykler,* 111 Colo. 510, 143 P. (2d) 687. The latter case involved a provision specifying a method of terminating a lease which was set out in the original instrument, and we held that there was evidence to support the contention that it was included in subsequent verbal leases. The method of termination was duly followed by the landlord and we held that, in view of the record, it was immaterial whether the term of the tenancy be considered as continuing under the terms of the old lease, or whether there was a new verbal lease, because there was evidence to support either theory. In that case the provision involved a method of termination which, from its very nature, could only be put into operation once.

The provision which is the point. of controversy in the instant case is one that, if binding, calls for affirmative action by both landlord and tenant in the fall of every year, beginning with the fall of 1937. The record shows that not once was this provision observed, even in the year 1937, when the original written lease was still in effect.

We are in accord with the view expressed by the trial judge that the only question to be considered was whether "the terms of the new lease are the terms of the written lease between Millage and somebody else," and that the other seven of the eight grounds urged in support of landlord's motion to dismiss did not warrant granting of the motion.

For the foregoing reasons, we are of the opinion that plaintiff tenant made a prima facie showing, entitling him to the "away-going" crops, and that the trial court erred in sustaining defendant's motion to dismiss.

The judgment is reversed, and the cause remanded for a new trial.