## No. 16,167.

### HEMBERGER *v.* HAGEMANN.
(210 P. [2d] 995)

Decided September 13, 1949.   Rehearing denied October 31, 1949.

Messrs. AUSTIN & KONKEL, for plaintiff in error.

Messrs. ROLFSON & HENDRICKS, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

PLAINTIFF in error, plaintiff in the trial court, after March 1, 1947, filed her complaint in unlawful detainer against the defendant for possession of farm lands, and prayed for an order restraining defendant from disposing of the crops on said lands until the rights of the parties could be determined. Hearing was had on the complaint and restraining order entered. Defendant answered, and trial was consummated December 12, 1947. After both parties joined in a motion for a directed verdict, the jury was excused and findings and judgment were entered for defendant.

Plaintiff, as owner of a half section of land in Sedg-

wick county, on March 28, 1942, entered into a written lease on said property with defendant, the term of which was to expire March 1, 1943, the rental basis being one-third of all crops of every nature delivered to the nearest market. At the expiration of the lease, defendant remained in possession and continued to cultivate and crop the land from year to year thereafter on the same terms under, as he alleges, an oral lease. These facts are alleged and admitted by both parties. This relationship existed until about July of 1946, and defendant claims that early in the summer of that year he did some summer tilling on part of the land and after the 1946 harvest, he prepared the land from which a crop was taken in 1946 so that he could plant winter wheat thereon in the fall of 1946.

Defendant testified that in July of 1946, he heard a rumor to the effect that he would not have the land another year and wrote plaintiff, who was a resident of Nebraska, inquiring as to whether or not he would have the land the following year. On August 13, plaintiff signed the following notice:

"Kearney, Nebraska, August 13th, 1946.
"Mr. Geo. W. Hagemann,
Julesburg, Colo.
"Dear Sir:-
"You are hereby notified to quit, vacate and deliver up possession of the premises now occupied by you, being the West Half of Section 12, Township Ten (10), Range Forty-three (43), Sedgwick County, Colorado, on or before March 1st, 1947, the date of expiration of your present lease. This notice is given for the purpose of terminating your tenancy.
"Dated at Kearney, Nebraska, August 13th, 1946.
"Elizabeth Hemberger"

This notice was sent to defendant by registered mail which he admits receiving about August 23. He made no further inquiry concerning the matter other than to consult an attorney who told him that the notice was

insufficient and the service was not according to statute provided in such cases. Defendant, prior to the receipt of this notice, had tilled sixty acres of wheat land, but after receiving the notice, prepared about two hundred acres more for wheat and sowed the entire acreage to wheat about September 10 and afterwards. He remained on the premises, and on March 1, 1947, the expiration date of his oral lease, he did not vacate, and in April, 1947, plaintiff caused a written notice for possession to be served on the defendant, thereby demanding possession within three days after the service of the notice. This original notice is plaintiff's Exhibit D, but the date of service is not shown thereon. However, it is clearly established by the evidence that after the service of this notice, defendant sowed twenty-six acres of land to oats and remained on the premises until after he had harvested the wheat crop and the crop of oats, when he placed a padlock on the house and vacated the premises otherwise.

As a result of a hearing on the complaint concerning the restraining order, defendant was ordered to harvest the crops and present to the court all items of expense in connection therewith; market the crops to the best advantage, and pay all sums received from the sale of the crops, less expenses, into the registry of the court pending the outcome of the litigation.

After trial, the court found that the crop from all of the land planted to winter wheat in the fall of 1946 belonged two-thirds to the defendant and one-third to the plaintiff; that as to the crop from the twenty-six acres of land planted to oats in April of 1947 and harvested in 1947, defendant had no interest, but was entitled to be compensated for all of his work and labor and expenses incurred for seeding, harvesting and marketing the crop of oats. In this connection, the court found that as to the crop of oats, defendant, having been served with a demand for possession, was a trespasser on the lands after March 1. Both parties took exception to the find-

ings and judgment of the court, and the plaintiff prosecutes this writ of error, specifying five points, two of which are controlling and are as follows: "4. The Court erred in holding that a tenant after receiving notice of termination could proceed to plant and harvest a crop that did not mature by the end of the tenancy. 5. The Court erred in holding that a tenant who plants and harvests a crop, all the work being done after his tenancy definitely ceases, is entitled to compensation for work done in preparation and harvesting of the crop."

Defendant has filed cross specifications of points which are: (1) That the trial court erred in the finding as to the 26 acres of oats, that the defendant was a trespasser entitled only to payment for his work and expenses. (2) That the court erred in ordering that the defendant pay one-half of the costs of suit. (3) and (4) That the court erred in not sustaining defendant's second defense; that the complaint did not allege facts upon which relief could be granted and in overruling defendant's objection to the admission of any evidence.

As to the material facts, the evidence shows little conflict, and the controlling features are either alleged or admitted and are generally as hereinbefore set out. The original written lease between the parties for a term of one year, expiring March 1, 1943, provided that the tenant would promptly yield possession at the expiration of the term without notice. Defendant remained on the premises after the expiration of the term of the written lease without either a written lease or an express oral agreement. It is not contended, however, that defendant's tenancy was without the implied consent of plaintiff. The tenancy, therefore, was one from year to year, and according to the terms of the original written lease; it follows that each new yearly tenancy carries the same expiration date, viz., March 1 the following year. This was apparently clearly understood by both parties. However, in such case, a duty rests upon the landlord not to allow the tenant to proceed under any

assumption that he might again be holding over for another year if the landlord contemplates terminating the tenancy at the expiration date without some notice. The tenant could rightfully proceed and have the profits from all crops planted before such notice, together with the right to enter and take same after the expiration of the lease term. *Millage v. Spahn,* 115 Colo. 444, 175 P. (2d) 982.

Regardless of whether notice was required or not, it is admitted that defendant received the notice of termination of tenancy about August 23, 1946, which was long before the expiration date. Acknowledgement of receipt of notice is equivalent to any statutory method of service so long as the notice reaches the hands of the person sought to be notified in sufficient time. Sufficiency of the notice or the manner of service thereof cannot be questioned where notice was conceded to have been received. *Hepp Wall Paper & Mercantile Co. v. Deahl,* 53 Colo. 274, 125 Pac. 491.

It is clearly established that defendant had reason, in July of 1946, to be on notice that his tenancy was not secure. He admits writing to plaintiff, inquiring about a rumor he had heard. The reply was the notice of termination. He proceeded thereafter to plant approximately 200 acres of wheat and remained in possession of the premises after March 1, the end of the term, and, in face of a written demand for possession properly served upon him in April, 1947, still remained in possession and planted 26 acres of the land to oats. This he did at his own risk, all the time having full knowledge of the termination date of tenancy and being further fully advised that the tenancy would definitely terminate before maturity of the crops planted.

Under the circumstances of the case, defendant was, and is, entitled to his share of the crop from 60 acres summer tilled prior to any notice received, as that would be according to usage and custom in a hold-over tenancy with implied consent, and he would have been

entitled to re-enter the premises after the expiration date of the tenancy to cultivate or harvest such crop as well as any crop he might have planted previous to the service of the notice of termination of tenancy. Much of this is clearly established by our statute, section 5, chapter 70, '35 C.S.A.

This case must be distinguished from a situation where a lessor, either expressly or by implication, recognizes the right of a tenant to sow crops in the last year of his term, in which event the tenant has a right to harvest the away-going crop at or after the expiration of the lease, where the lease is silent as to who is entitled to such crops. In this case, there is no last year of the term, because the continued occupation of the premises was on a year to year basis in conformity with the terms of the original written lease. This written lease provided that the landlord could re-enter the premises in the fall and prepare the land or sow crops for the ensuing year's harvest. Under such terms, the landlord was free to enter into a lease with other parties for the following year and such parties could exercise the landlord's right and enter the premises for the purpose of preparing the land or sowing crops for the oncoming year. Plaintiff had made such a lease, as is shown by the evidence, but the new tenant was denied the right to enter the premises by the defendant, who proceeded to plant the crops as heretofore stated, and in doing so insisted that he be given a written agreement that he could harvest the crop so planted.

All authorities that recognize the right of a tenant to have away-going crops after termination of his tenancy, always limit the right to such crops as have been planted at the time he is notified of the termination of the tenancy. If this were not the law, tenants could deprive the landlord of the profits of his land for the following season.

The evidence is not clear as to the amount of acreage defendant had tilled previous to receipt of the

notice in August of 1946. It is clear that he had summer-tilled 60 acres, which is not disputed by the plaintiff. In one portion of his evidence defendant testified that he had tilled about 80 acres of the stubble ground before receiving the notice, but he also stated he had tilled all the land, being about 200 acres more. Defendant was entitled to his share of the crop on the 60 acres tilled before receiving the notice, but of the remaining stubble acreage tilled before or after the notice and not planted, as is admitted, until September, nearly a month after receiving the notice, he is entitled to fair compensation for the work done on such of the stubble land as he tilled before receiving notice, but is not entitled to the share of the crop therefrom. No doubt it was in the mind of the trial court that to deprive defendant of his share of the crop would be allowing unjust enrichment to the plaintiff. It may seem harsh, but, under the circumstances of the case, whatever benefits came to the plaintiff by the actions of the defendant, which he took at his own risk, were forced upon her against her will and an effort made by her to prevent it. She cannot be called upon, directly or indirectly, to answer for involuntarily acquiring such benefits.

As to the finding of the trial court that defendant was not entitled to his share of the oat crop planted after the term of his lease had expired and after notice of demand for possession, but that he was entitled to expenses incurred in connection with the planting and harvesting of the oat crop, the court, in express words, determined that defendant was not entitled to a share of the oat crop, but we cannot affirm the finding and judgment of the court that he is entitled to expenses in connection therewith. If defendant was a trespasser, as the court determined, then he is entitled to no return for expenses so daringly made, and the plaintiff being entitled to judgment for all of the oat crop, all costs of the lawsuit should follow that judgment instead of be-

ing divided between the parties litigant as ordered by the trial court.

We recognize the hardship and loss to defendant, and likely it is improper for us to say that the entire matter here involved should have been amicably composed on some basis reasonably fair to both parties. To affirm, as being correct, the judgment of the trial court would leave the relationship of landlord and tenant, under circumstances here prevailing, so precarious as to remove certainty from the rights of both parties.

The judgment is affirmed as to the right of plaintiff to the oat crop from the 26 acres, but reversed in all other respects and the cause remanded with directions to take testimony, if necessary, to fix distribution of the funds in the hands of the court in accordance with the views herein expressed.

MR. JUSTICE STONE dissents.

MR. JUSTICE STONE dissenting.

The principal question involved in this case concerns notice. Was it necessary and, if so, was is properly served?

The tenant originally held under written lease for one year, from March 1, 1942, to March 1, 1943, and continued in possession without any additional lease for several years thereafter. That by such holding over with the landlord's consent the tenancy became one from year to year is too well established to be questioned in this jurisdiction. *Sinclair Refining Co. v. Shakespeare,* 115 Colo. 520, 175 P. (2d) 389, 171 A. L. R. 1058; *Ochsner v. Langendorf,* 115 Colo. 453, 175 P. (2d) 392; *Hallett, Trustee v. Barnett,* 51 Colo. 434, 118 Pac. 972; *Hurd v. Whitsett,* 4 Colo. 77.

Section 7, chapter 70, '35 C.S.A., provides: "Notice to Quit.—In all cases of tenancy, from year to year, the same may be terminated by notice, in writing, to quit, duly served three months prior to the end of the year; * * *." I am not unaware of the statement in *Hancock*

*v. Central Shoe & Clothing Co.*, 53 Colo. 190, 125 Pac. 123, that notice to quit is not necessary to a tenant holding over. However, this statement is in conflict with the plain terms of the statute and is contrary to the great weight of authority. Anno. 156 A. L. R. 131. I am also aware of, but not impressed by, the distinction sought to be made between tenancy from year to year by lease, and such tenancy resulting from holding over, found in some opinions. Anno. 25 L. R. A. (N. S.) 848; 32 Am. Jur. 797, §947. Our statute makes no such distinction, and I am unable to distinguish, as a matter of fair dealing, between the right to notice of termination by a tenant who has been permitted to remain in possession from year to year on the expiration of a term lease, and such right by a tenant whose original lease was from year to year. If we are to hold that no notice is necessary, notwithstanding the statute, we should so hold explicitly.

If notice is necessary, the remaining question is the sufficiency of the service of notice by registered mail. Section 7 of our statute, above cited, requires not merely that notice in writing be given, but that it be "duly served." Further, the statute specifically sets out the different methods by which such notice may be served. '35 C.S.A., c. 70, §8. Therefore, it would seem to be mandatory that there should be a compliance with one of those methods in order to make effective service. Among those methods, service by mail is not included. If we are to hold that the landlord may select the post office department as his delivering agent for service of notice to quit, as in *Craig v. Heil*, 47 A. (2d) 871, we should so hold explicitly. If we are to hold that it is immaterial how service is made, so long as the tenant admits having actual notice, we should so hold explicitly. Instead of so doing, the court in the majority opinion lays down the rule that an admission of improper service is a waiver of proper service. This is indeed a novel

legal doctrine. It not only belies the very nature of waiver, but would nullify any statute requiring any specific method of service, in that an admission that service had been made in some other way than provided by statute would thereby be made sufficient.

For the above reasons I dissent.