Nos. 16,541 and 16,542.

WESTING v. MARLATT.
(238 P. [2d] 193)

Decided October 8, 1951. Rehearing denied November 19, 1951.

Mr. J. NELSON TRUITT, Mr. JOHN L. STIVERS, for plaintiff in error.

Messrs. SHUTERAN, ROBINSON & HARRINGTON, for defendant in error.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the court.

WE shall herein refer to plaintiff in error as landlord, and to defendant in error as tenant.

Stripped of all nonessentials, the questions presented in these consolidated cases are: 1. Is the tenant entitled to $180.58 awarded him by the jury? 2. Is the tenant entitled to two-thirds of the money received for the crop planted in the year 1949 on the premises leased by him from the landlord? A third question was presented in the trial court and resolved adversely to the tenant, viz.,

was the tenant's lease orally extended for the farm year 1950? The last inquiry no longer is important, since the 1950 crop, planted in 1949, has been harvested and the tenant vacated the farm in the early spring of 1950.

In September 1939, landlord and tenant entered into a written lease of the premises in question for the period commencing March 1, 1940 and ending February 28, 1941. Said lease thereafter was extended in writing from time to time on the same terms, except for an increase of crop rental, to February 28, 1950. It was provided in the lease that the lessee had the right to summer-fallow certain acreage and "That as to all lands summer-fallowed by the said lessee under this lease the said lessee shall have a lease on said land for another year, to-wit, for the year 1941, on the same terms and conditions of this lease."

Tenant filed suit against landlord in February, 1950 alleging that he and landlord had an oral agreement for the extension of said lease for a period of one year after February 28, 1950; that landlord was threatening to evict him from the premises; had served notice of termination of lease on September 2, 1949 effective February 28, 1950; had rented the land to one Hanlon; and tenant prayed for an injunction restraining the landlord and Hanlon from interfering with his quiet enjoyment of the premises. In the same complaint, tenant claimed certain overpayments of crop rental made in previous years, and on the trial all such payments, save and except those for the year 1949, were either expressly waived or not proven. Landlord, by her answer, denied the extension of the lease; claimed complete settlement of crop rentals for the respective years; and alleged that tenant owed her $80.00 for 1949 pasture rent.

In March 1950, landlord filed an eviction suit against tenant, alleging that his right to occupy the premises terminated February 28, 1950. Tenant, by way of answer, set forth his claimed oral extension of the lease, and alleged that in reliance on said oral extension and

the terms of his prior lease, he had left fallow certain acreage during the summer of 1950, and in the fall of that year had planted the same.

Issue being properly joined on each of these claims the cases were consolidated for trial before a jury, tenant having requested a jury trial. The cases are here consolidated for review.

On the issue of the overpayment of crop rental, the jury returned a verdict in favor of tenant in the sum of $180.58, and in the eviction suit it answered an interrogatory finding that there was no oral extension of the lease to February 28, 1951. Judgment was regularly entered in favor of the respective parties, the court having approved and adopted the answer of the jury to the interrogatory submitted to it. In the 1947 extension of the lease it was provided that the crop rental should be "one-third for all land cultivated."

By its order and decree, the trial court directed that the landlord have restitution of the premises, and that tenant "have the right to harvest the growing grain crop on the 296 acres of land which was summer tilled in 1949 because of the provision of the 'summer fallowing' agreement in the lease and the amendments thereto by [useage] usage." Division of the crop between landlord and tenant was ordered as per the 1947 extension.

The court, by its decree and order, also directed the tenant to haul all wheat harvested on the cultivated lands in controversy to one elevator, taking a receipt therefor in the names of landlord and tenant; file the same with the clerk of the district court to abide the order of the court; and permit the landlord to be present at the harvesting of the wheat and check the amount thereof.

■ We have carefully reviewed all of the evidence presented, and are convinced that the jury could well have determined that there was an oral extension of the lease for an additional year. In *Hemberger v. Hagemann,* 120 Colo. 431, 210 P. (2d) 995, we determined that where

the landlord expressly, or by implication, recognizes the right of a tenant to sow crops in the last year of his term, the tenant has a right to harvest the away-going crop at the time or after the expiration of his lease, where there is no provision in the lease as to who is entitled to such crops. In the instant case there was no such provision.

█ In the case of *Millage v. Spahn*, 115 Colo. 444, 175 P. (2d) 982, our court approved the following statement from 141 A.L.R. page 1244: "The courts seek to promote and encourage husbandry, and consequently favor wherever possible the tenant who sowed crops as against the landlord or other persons claiming such crops at the termination of the tenant's lease. The basis of the doctrine of emblements, supra, is stated in the following cases to be the justice of assuring to the tenant compensation for his labor and the desirability of encouraging husbandry as a matter of public policy. [numerous cases cited]"

Here we have a case where by the very terms of the lease the tenant had a right to crops on land summer-fallowed by him during the summer of 1949 and prior to the notice of termination of the lease.

The order of the trial court regarding division of crops between the landlord and tenant was fair, just and in accord with the terms of the lease. It took into consideration all of the facts shown by the evidence in the light of the pertinent authorities. It appeals to us as a sound basis to determine the rights of the parties. Landlord, by her conduct at least, impliedly if not expressly gave consent, as she had done over a period of nine or ten years, to the tenant's summer tilling operations, and now, after tenant has tilled the soil, furnished his own seed and labor, and produced a crop, she would divest him of all of the fruits of his labor and investment. This, she cannot legally do.

█ No protest was made by the landlord to the submission of the interrogatory to the jury, hence the same was waived. Rule 49 (a), R.C.P. Colo.

██ As to the claim for overpayment of crop rent

in previous years, landlord claims that tenant having paid over money as crop rental must plead and prove fraud, duress or mistake to recover. "The fact that one to whom money is paid by mistake used no deceit or unfairness in obtaining it, but acted in good faith, will not preclude its recovery back in an action for money had and received." 40 Am. Jur. 847 §193; *Johnson v. National Sugar Mfg. Co.*, 88 Colo. 404, 297 P. 995; *Scott v. Boma Investment Co.*, 101 Colo. 217, 72 P. (2d) 274.

Mistake may be unilateral. 40 Am. Jur. 846 §191. In the instant case there was no dispute about the mistake in measurement of which tenant complains. Landlord says the payment made was a complete settlement. The jury held otherwise, and she is bound by its holding.

We have noted all of the specifications of error presented by the respective parties and are convinced that no prejudicial error was committed by the trial court. The judgments are affirmed.