**Maryln A. ELRICK, County Treasurer and Ex–Officio Public Trustee of Washington County, Colorado, Plaintiff–Appellee,**

v.

**Richard D. MERRILL, a/k/a Richard Merrill, Barbara P. Merrill; The United States of America acting through the Farmers Home Administration and The United States of America, acting through the Farm Service Agency, as successor in interest to the Farmers Home Administration under Public Law 103–354; and Shawn Osthoff and Crystal Osthoff; Defendants–Appellees,**

and

**Robert F. Parker and Ilona W. Parker, Defendants–Appellants.**

No. 99CA0467.

Colorado Court of Appeals,
Div. III.

May 25, 2000.

As Modified on Denial of Rehearing
Aug. 31, 2000.

W.B. Paynter, P.C., William Paynter, Akron, Colorado, for Plaintiff–Appellee.

Brandenburg Law Office, Dennis L. Brandenburg, Brush, Colorado, for Defendants–Appellees Richard D. Merrill a/k/a Richard Merrill, Barbara P. Merrill.

Duane K. Ross, Office of the General Counsel, Denver, Colorado, for Defendants–Appellees The United States of America acting through the Farmers Home Administration, The United States of America, acting through the Farm Service Agency.

Anderson and Chapin, P.C., Robert B. Chapin, Brush, Colorado, for Defendants–Appellees Shawn Osthoff and Crystal Osthoff.

Sara Allen, Ft. Morgan, Colorado, for Defendants–Appellants.

Opinion by Judge TAUBMAN.

In this interpleader action, defendants, Robert F. and Ilona W. Parker, appeal the trial court's judgment dismissing their cross-claims against defendants, Shawn and Crystal Osthoff; the United States of America, Farmers Home Administration, n/k/a Farm Service Agency (FSA); and Richard D. and Barbara P. Merrill. The Parkers further appeal the trial court's judgment granting the Merrills and the Osthoffs' requests for attorney fees. We affirm in part, reverse in part, and remand for further proceedings.

This case arose from an interpleader action filed by the Washington County treasurer and ex-officio public trustee, plaintiff, Maryln A. Elrick, as a result of excess proceeds held by her following a foreclosure sale. The trial court dismissed the Parkers' cross-claims against the Osthoffs and FSA and ruled in favor of the Merrills following a bench trial.

The trial court made findings of fact as follows. On or about June 3, 1981, the Merrills executed a promissory note and deed of trust secured by the property in question. The principal amount of the note was $338,390, payable to FSA. Subsequently, FSA granted the Merrills additional loans secured by the wheat crop growing on the property in 1997, as well as other equipment on the property. These loans totaled $230,420.

On or about October 15, 1995, the Merrills entered a lease agreement with the Osthoffs which expired by its terms on December 1, 1996. However, the lease permitted the Osthoffs to enter the property to harvest a winter wheat crop in the summer of 1997 that would be planted in the fall of 1996. The Osthoffs did plant this crop in the fall of 1996, and harvested the wheat in July 1997.

On February 9, 1996, the Merrills received a chapter 7 discharge of their debts in bankruptcy, including a discharge of their obligations pursuant to three separate deeds of trust secured by the property at issue here.

As a result of their insolvency, the Merrills defaulted on the promissory note secured by the third deed of trust, and a proper Notice of Election and Demand for Sale was filed. The encumbered property was sold at a public sale on December 18, 1996. Robert Parker was the high bidder at $221,000. He was issued a certificate of purchase, which was later assigned to Robert F. Parker and Ilona W. Parker. From the amount collected, the public trustee paid the entire balance on the promissory note—$201,019.87—to FSA. This left a balance of $19,980.13 to be held by the public trustee until the six month redemption period expired on June 18, 1996.

After the public sale, the Parkers purchased the promissory note secured by the first deed of trust, and obtained an assignment of the second deed of trust.

On April 16, 1997, FSA filed with the public trustee a notice of claim to redeem the excess proceeds as payment for the debt secured by the crop and other equipment. However, FSA did not redeem.

On May 27, 1997, the Parkers filed with the public trustee a notice of claim for the excess proceeds and a notice seeking payment of that balance as an overpayment. Also on May 27, 1997, the Merrills filed with the public trustee a claim for the excess funds pursuant to the homestead exemption, § 38–38–111, C.R.S.1999.

Subsequently, the Parkers filed their cross-claim for waste against the Merrills. The cross-claim alleged that the Merrills had caused $7,500 worth of damage to various items of personalty on the property.

Two months after the public trustee filed this action, the Parkers amended their cross-complaint and joined the Osthoffs as defendants, alleging that the Parkers had acquired ownership of a wheat crop on the property that had been planted, cultivated, and harvested by the Osthoffs. The amended cross-complaint also requested reimbursement from the Merrills for taxes and interest owed on the property that the Parkers had paid during the redemption period.

Pursuant to § 38–38–302(3), C.R.S. 1999, the period of redemption expired on June 18, 1997, and at that time, a public trustee deed was issued to the Parkers. However, under § 38–38–303(1), C.R.S. 1999, FSA still had ten days after June 18, 1997, within which to redeem the property. Therefore, on June 18, 1997, the Parkers obtained title to the property subject to FSA's right to redeem. After June 28, 1997, the Parkers obtained title to the property free of FSA's redemption rights. See *Graham v. Alcoves, Inc.,* 148 Colo. 379, 366 P.2d 375 (1961) (deed issued prematurely by public trustee is not void, but carries the naked title held by the trustee and does not divest the parties of their redemption rights).

The trial court dismissed the Parkers' claims against the Osthoffs, concluding that the Osthoffs did not receive notice of the foreclosure sale, and thus their lease to the 1997 winter wheat crop was not extinguished by it.

The trial court then granted the Osthoffs' request for attorney fees against the Parkers and their attorney, jointly and severally, concluding that the Parkers' claims were frivolous, groundless, and without substantial justification.

The trial court also dismissed the Parkers' claims against FSA, finding that the Parkers did not meet their burden of showing that FSA had waived its sovereign immunity. Accordingly, the court concluded that it lacked jurisdiction to adjudicate the cross-claims against FSA.

In addition, after a bench trial, the court dismissed the claims against the Merrills, determining that the Parkers had not established their claim for damages. The trial court then awarded attorney fees against the Parkers and their attorney in favor of the Merrills on the same basis that it had awarded the Osthoffs' attorney fees.

## I. Dismissal of FSA

■ The Parkers assert the trial court erred in concluding they had not met their burden to show that FSA had waived its sovereign immunity by entering an appearance and requesting the excess proceeds from the foreclosure sale. We disagree.

Absent an express and unequivocal waiver, sovereign immunity protects the federal government and its agencies from suit. A waiver of a federal agency's sovereign immunity must be strictly construed in favor of the government entity. *See Department of Army v. Blue Fox, Inc.*, 525 U.S. 255, 119 S.Ct. 687, 142 L.Ed.2d 718 (1999).

A trial court's conclusion as to whether immunity has been waived is a determination as to subject matter jurisdiction, and is subject to a mixed standard of review. The trial court's factual findings will not be reversed on appeal unless clearly erroneous. However, the existence of subject matter jurisdiction is a question of law and is therefore subject to *de novo* review. *City of Boulder v. Public Service Co.*, 996 P.2d 198 (Colo.App. 1999); *Smith v. Town of Estes Park*, 944 P.2d 571 (Colo.App.1996). The party seeking to establish a government agency's liability has the burden of proving jurisdiction. *Mason v. Adams*, 961 P.2d 540 (Colo.App.1997).

It is undisputed that FSA is a federal government agency protected by the doctrine of sovereign immunity. The Parkers nevertheless argue that because FSA entered an appearance to request the excess proceeds, it waived its sovereign immunity, and therefore, was subject to the jurisdiction of the trial court.

The trial court determined that the Parkers did not meet their burden to prove FSA had waived its immunity. We conclude that the record supports the trial court's factual determinations. We further agree with the trial court's legal conclusion that FSA did not waive its sovereign immunity merely by requesting the excess proceeds from the foreclosure sale.

Based on this disposition, we do not address any of the Parkers' cross-claims against FSA, nor do we address any responses raised by FSA, other than sovereign immunity.

## II.  Removal

The Parkers next assert the trial court erred in refusing to remove this case to federal court. We disagree.

Pursuant to 28 U.S.C. § 1441(a) (1994), a defendant may remove a civil case brought in state court to federal district court if the case could have been originally brought in federal court. Although a defendant may remove a case to federal court, a plaintiff may not request such removal. *National Cigarette Service Co. v. Farr*, 42 Colo. App. 356, 594 P.2d 603 (1979) (28 U.S.C. § 1441 precludes a plaintiff from requesting removal).

Here, only FSA had the authority to request removal to federal court. Because FSA did not make such a request, and instead sought dismissal based on lack of subject matter jurisdiction, the trial court did not err.

## III.  Osthoffs' Motion to Dismiss

The Parkers contend the trial court erred in dismissing their cross-claims against the Osthoffs for the wheat crop on the property that was harvested by the Osthoffs in July 1997. Conversely, the Osthoffs contend they are entitled to the wheat crop pursuant to their lease with the Merrills. We agree with the Parkers, subject to any equitable claims the Osthoffs may assert.

Sections 38–38–501 to 38–38–506, C.R.S. 1999, govern the determination of title to foreclosed property upon the expiration of the foreclosure redemption period.

Section 38–38–501, C.R.S.1999, provides:

Upon the expiration of the period of redemption allowed to the owner, ... title to the property sold shall vest in the holder of the certificate of purchase.... *Subject to* the provisions of sections 38–38–506 and 38–41–212(2), such title shall be free and clear of all liens and encumbrances junior to the lien foreclosed.

(emphasis added).

Section 38–38–506(1), C.R.S.1999, provides:

For the purposes of this section, "omitted party" means any person who: (a) Subsequent to the recording of a mortgage, deed of trust, or other lien instrument, ... has obtained a valid possessory interest and is in actual possession of such property; and (b) is not notified pursuant to section 38–

38–101(7)(a) of a public trustee's foreclosure sale....

Section 38–38–506(3), C.R.S.1999, provides that if the omitted party is a lessee, the lessee's interests pursuant to the lease are not affected by a foreclosure if, at any time prior to the transfer of title pursuant to § 38–38–501, a document is filed with the public trustee or sheriff affirming the lessee's interest in the property.

Here, it is undisputed that the Osthoffs were not notified pursuant to § 38–38–101(7)(a), C.R.S.1999, of the public trustee's foreclosure sale, and thus, under § 38–38–506(1), they were omitted parties.

■ However, based on the provisions of § 38–38–506(3), the Osthoffs' lease is not saved from extinguishment by their omitted party status. It is undisputed that neither the foreclosing lienor –FSA — nor the certificate of purchase holders — the Parkers — filed a document with the public trustee affirming the Osthoffs' interest in the winter wheat crop harvested after the redemption period expired.

In addition, the supreme court has explicitly held that a lease is extinguished upon foreclosure where a party purchasing property subject to a lease is neither a party to the lease nor aware of the existence of the lease. *See First Interstate Bank v. Tanktech, Inc.,* 864 P.2d 116 (Colo.1993).

Here, on appeal, none of the parties alleges that the Parkers were parties to the lease or were aware of its existence. Furthermore, none of the parties contends that the Parkers were on inquiry notice of the Osthoffs' lease interest in the wheat crop. *See generally Adelson v. Board of County Commissioners,* 875 P.2d 1387 (Colo.App.1993) (holding that inquiry notice requires sufficient facts to attract the attention of interested persons and to prompt a reasonable person to inquire further).

Nevertheless, the Osthoffs rely, as did the trial court, on § 13–40–105, C.R.S.1999, to argue that they are entitled to the wheat crop as an "away-going crop." This is a crop planted by a tenant prior to the expiration of a lease, but harvested after the lease expires.

*See Westing v. Marlatt,* 124 Colo. 355, 238 P.2d 193 (1951).

Section 13–40–105 provides:

In all cases arising under section 13–40–104(1)(c) to (1)(i), the person in possession is entitled to cultivate and gather the crops, if any, planted or sown by him previous to the service of the demand to deliver up possession, and then grown or growing on the premises, and shall have the right to enter such premises for the purpose of cultivating or removing such crops, first paying or tendering to the party entitled to the possession of said premises a reasonable compensation for the use of the land before removing such crops.

Here, the trial court incorrectly determined that the Osthoffs were entitled to harvest the winter wheat crop because it was a "going away crop" as contemplated by § 13–40–105. (Although the trial court used the term "going away crop," the case law uses the phrase "away-going crop").

■ Sections 13–40–104(1)(c) to (1)(i), C.R.S.1999, and, in turn, § 13–40–105, only apply in forcible entry and detainer (FED) actions when a landlord has evicted a tenant after a crop has been planted, but before it has been harvested. *See generally Clark v. Morris,* 710 P.2d 1130 (Colo.App.1985) (acknowledging that the provisions of § 13–40–101, *et seq.,* apply only when a landlord attempts to repossess property by following the procedural requirements of the statute, rather than by proceeding in some other manner, such as pursuant to a rental agreement).

■ Here, the trial court found that the Parkers did not demand that the Osthoffs vacate the property. Moreover, the record reflects that the Parkers were unaware of the Osthoffs' interest in the wheat until after the wheat had been harvested. Accordingly, because the Parkers did not pursue an FED action against the Osthoffs, we conclude § 13–40–105 does not apply here. In addition, based on *Tanktech,* we conclude that the Osthoffs' lease was extinguished upon the foreclosure of FSA's deed of trust. Thus, in July 1997, the Osthoffs were not entitled to remove any portion of the winter wheat crop.

In their petition for rehearing, the Osthoffs assert for the first time that they have a common–law right to the wheat crop pursuant to *Tolland Co. v. First State Bank of Keenesburg,* 95 Colo. 321, 35 P.2d 867 (1934). Because this argument was not raised in the parties' briefs, we do not address it. *Kelly v. Central Bank and Trust of Denver,* 794 P.2d 1037 (Colo.App.1989).

■■■ However, as the Parkers concede in their briefs on appeal, the Osthoffs may be entitled to equitable relief for the value of their work expended in cultivating and harvesting the wheat crop. Consequently, the Parkers are entitled to the three-quarters portion of the wheat crop that the Osthoffs wrongfully removed from the property, or its reasonable value, subject to any equitable claims that the Osthoffs may raise. We do not address the one-quarter portion of the crop removed for the benefit of FSA because, as discussed above, FSA did not waive its sovereign immunity.

We remand this matter to the trial court to determine the amount of damages to which the Parkers are entitled for the wheat crop harvested by the Osthoffs in July 1997. On remand, the trial court should also consider any equitable remedies to which the Osthoffs may be entitled, including but not limited to a claim based on unjust enrichment.

## IV. Claims against the Merrills

### A. Claim for Waste

The Parkers contend the trial court erred in denying their claim for waste based on the Merrills' refusal to pay interest on the other two deeds of trust or the taxes or insurance due on the property while remaining in possession during the redemption period. The Parkers also contend the judgment for waste should be paid from the excess proceeds of the foreclosure sale. We agree in part and remand to the trial court for further proceedings.

■■■ Whether the alleged damage to the property constituted waste is a question of fact, and the trial court's determination will not be disturbed on appeal unless clearly erroneous. *Gregg Homes, Inc. v. Gregg & Co. Builders, Inc.,* 978 P.2d 146 (Colo.App.

1998). However, the trial court's interpretation and application of the relevant statutes is a question of law subject to *de novo* review. *In re Quiat,* 979 P.2d 1029 (Colo.1999).

Section 38–38–602, C.R.S.1999, provides:

(1) During the period of redemption, . . . the person in possession shall not commit waste, and the purchaser shall have such action or remedy for waste, including injunction, as he would have as owner of the premises. During such period, the owner of the premises shall keep the premises in repair, shall use reasonable diligence to continue to keep the premises yielding an adequate income, and shall pay current taxes before a penalty accrues and interest becomes due on any prior encumbrance, keep the premises insured for the protection of the holder of the certificate of purchase, . . . and failure to do so shall constitute waste. . In case of waste committed or danger of waste or an actual probability of the security being rendered inadequate, a receiver may be appointed to take possession and preserve the property at any time after the sale under such foreclosure.

Although the Merrills had a right to remain on the property during the period of redemption, they also had a duty to prevent waste, including paying the taxes, insurance, and interest on prior encumbrances on the property.

■■■ We conclude the trial court erred in part in dismissing the Parkers' claim for waste based on the Merrills' failure to pay interest, taxes, and insurance on the property during the redemption period. The trial court concluded that the Parkers' only remedy for preventing such waste was the appointment of a receiver or injunctive relief pursuant to § 38–38–602. However, the statute is not so limited. The statutory language specifically allows the purchaser to pursue *any* actions or remedies that would be available to an owner, *including* those for injunctive relief. This language is precatory and not limiting, and therefore, allows a purchaser to pursue a claim for damages as well as one for injunctive relief. *See Israel v. Rifle Econolodge Joint Venture,* 793 P.2d 658 (Colo.App.1990) (without discussing § 38–38–

602, holds that party may seek damages as redress for waste).

■ We therefore conclude that the Parkers, pursuant to § 38–38–602, could bring an action for damages or an injunction. Because the Parkers were entitled to damages, a request for injunctive relief would have been inappropriate. *Home Shopping Club, Inc. v. Roberts Broadcasting Co.*, 961 P.2d 558 (Colo.App.1998) (equitable relief will not be granted if there is a plain, adequate, and speedy remedy at law).

In addition, § 38–38–602 provides that to prevent waste a receiver *may* be appointed; a purchaser is not required to seek the appointment of a receiver. This conclusion is supported by § 38–38–602(2), which allows a purchaser to regain possession of the property if a receiver has not been requested and the owner has abandoned possession.

Thus, pursuant to § 38–38–602, the Parkers are entitled to a judgment for waste. However, because the Parkers do not allege that they paid any insurance premiums on the property, they are not entitled to recovery for this item.

■ Similarly, because the Merrills' bankruptcy discharge extinguished their obligations under the first and second deeds of trust, as discussed below, the Parkers are not entitled to a judgment for interest.

■ A discharge in bankruptcy enjoins creditors from attempting to collect dischargeable debts as personal liabilities of the debtor. See 11 U.S.C. § 524(a)(2)(1994); *United Guaranty Residential Insurance Co. v. Dimmick*, 916 P.2d 638 (Colo.App.1996). This includes claims for interest on dischargeable debts. *See generally In re Chiapetta*, 159 B.R. 152 (Bankr.E.D.Pa.1993) (holding that creditor will only be paid interest if (1) the debtor is solvent; (2) the collateral securing the debt produces income after filing the petition; or (3) the collateral is sufficient to pay the interest as well as the principal of the claim); *In re Churchill*, 109 B.R. 863 (Bankr.S.D.Ill.1990) (recognizing that a claim for interest must arise from same legal basis which gave rise to claim for principal); 15 *Collier on Bankruptcy* § 502.03[3][c] (2000) ("interest does not sur-

vive the debt from which it stemmed; if the debt was extinguished, so was any interest relating to it").

■ Furthermore, a debtor may establish a defense to an action to collect a debt by introducing a certified copy of the order of discharge. The burden then shifts to the creditor to show that the claim is excepted from discharge under 11 U.S.C. § 523(a) (1994). *Blecker v. Kofoed*, 714 P.2d 909 (Colo.1986).

Here, the Merrills produced a certified copy of the order that discharged the debt obligations covered by both deeds of trust. Thus, the burden was on the Parkers to show how their claim for interest on those debts is excepted from discharge. The Parkers did not present evidence sufficient to meet this burden. Thus, the Parkers are not entitled to interest on the two deeds of trust.

The Parkers, however, may be entitled to reimbursement for taxes paid during the redemption period. It is unclear from the record for what taxes the Parkers request reimbursement. 11 U.S.C. § 523 (1994), provides that the discharge of a debtor does not discharge him or her from any debt for a tax specified in 11 U.S.C. § 507(a)(8) (1994). 11 U.S.C. § 507(a)(8)(B) includes "a property tax assessed before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition." Thus, on remand, the trial court should determine whether the taxes requested by the Parkers are included within 11 U.S.C. § 507(a)(8)(B).

If the court determines that the taxes are included within the definition in 11 U.S.C. § 507(a)(8)(B), it should then consider evidence regarding the specific periods for which the Parkers paid the taxes (i.e., were they 1996 taxes or quarterly taxes for the redemption period). The court should also determine whether the taxes should be prorated based on the periods for which they were paid—before or after the redemption period.

■ Finally, we note that because the Parkers did not allege at trial that the Osthoffs' failure to cultivate the entire parcel

constituted waste, we do not address that argument on appeal. *See Cedar Lane Investments v. American Roofing Supply of Colorado Springs, Inc.,* 919 P.2d 879 (Colo. App.1996) (appellate court will not consider arguments raised for the first time on appeal). Likewise, we do not address the Parkers' claim to an interest in grain bins on property not at issue in this case because there is no evidence that it was raised at trial.

### B. Compensation From Court Registry

The Parkers next assert that they are entitled to compensation for waste in the amount $34,049.06. The Parkers further assert they are entitled to satisfy that entitlement out of the excess proceeds held in the court registry. As discussed above, the Parkers may be entitled to a judgment for waste. However, we do not agree that they are entitled to satisfy any such judgment out of the excess proceeds.

Pursuant to § 38-38-111, C.R.S.1999, upon the expiration of the redemption period, excess funds held by the public trustee shall be paid "first to the last redeeming lienor, . . . and the balance, if any, shall be paid in order of priority, to junior lienors who have duly filed notice of intent to redeem . . . and who have failed to redeem . . . and finally to the owner of record as of the day of the foreclosure sale."

Here, FSA was a junior lienholder that duly filed a notice of intent to redeem, but did not redeem within the time allowed. Thus, pursuant to § 38-38-111, the excess funds must be distributed to FSA. In addition, the Merrills and FSA had entered a stipulation pursuant to which FSA is entitled to the proceeds. Therefore, the Parkers are not entitled to the excess funds.

On remand, the trial court shall determine the amount of taxes, if any, to which the Parkers are entitled.

### V. Attorney Fees

The Parkers next assert the trial court improperly granted the Osthoffs' and the Merrills' request for attorney fees against them and their attorney. We agree.

To prevail on a claim for attorney fees pursuant to § 13-17-102, C.R.S.1999, a defendant has the burden of proving by a preponderance of the evidence that the plaintiff's claims lack substantial justification. Lack of substantial justification is defined as "substantially frivolous, substantially groundless, or substantially vexatious." Section 13-17-102, C.R.S.1999.

The decision to award attorney fees is within the sound discretion of the trial court, and such award will not be disturbed on appeal unless the court abused its discretion in making the award. *Board of County Commissioners v. Eason,* 976 P.2d 271 (Colo. App.1998).

A claim is frivolous if the proponent has no rational argument to support the claim based on the evidence or the law. A claim is groundless if there is no credible evidence to support the allegations in the complaint. *Board of County Commissioners v. Eason, supra.*

### A. Parkers' Attorney's Appeal

The Osthoffs and Merrills contend that even if we reverse the awards of attorney fees against the Parkers, we must affirm the awards against their attorney because her name was not on the notice of appeal, and she did not file a separate notice of appeal. We disagree.

Until recently, divisions of this court have held that where a trial court awards attorney fees against a party and the attorney jointly and severally, the attorney could not appeal the award unless the attorney was named on the notice of appeal or filed a separate notice of appeal. *See, e.g., Maul v. Shaw,* 843 P.2d 139 (Colo.App.1992). Recently, the supreme court implicitly overruled *Maul v. Shaw, supra,* in *Cruz v. Benine,* 984 P.2d 1173 (Colo. 1999). There, the supreme court held that where a trial court has awarded attorney fees against a party and his or her attorney jointly and severally, and an appellate court subsequently reverses the trial court's determination and concludes that a party's claim does not lack substantial justification, the attorney's appeal of the attorney fee award

should not be dismissed merely because the attorney was not named in the notice of appeal as an appellant or did not file a separate notice of appeal. Thus, because we conclude that the Parkers' claims did not lack substantial justification, the Parkers' attorney was not required to be named as an appellant or to file a separate notice of appeal in order to appeal the trial court's award of attorney fees against her and in favor of the Osthoffs and the Merrills. Accordingly, the award of fees against the Parkers' attorney may not be upheld on this procedural ground.

### B. Osthoffs' Attorney Fees

The Parkers and their attorney contend the trial court erred in awarding attorney fees against them and in favor of the Osthoffs. We agree.

Here, relying on *Engel v. Engel,* 902 P.2d 442 (Colo.App.1995), the trial court concluded that the Osthoffs were entitled to attorney fees because the Parkers' claims were insufficient to survive a motion to dismiss.

We now reverse the trial court's award of attorney fees in favor of the Osthoffs because, as discussed above, the Parkers' claims regarding the wheat crop were meritorious, at least in part. *See In re Marriage of Paul,* 978 P.2d 136 (Colo.App.1998) (if underlying judgment is reversed, award of attorney fees must likewise be reversed).

Further, we conclude the trial court's reliance on *Engel* was misplaced. The court concluded that because the Parkers' claims against the Osthoffs did not survive a motion to dismiss, it was required to award attorney fees to the Osthoffs. However, the *Engel* court held that a claim is groundless "if the allegations of the complaint, *while sufficient to survive a motion to dismiss … are not supported by credible evidence at trial.*" *Engel v. Engel, supra,* 902 P.2d at 446 (emphasis added). Thus, the court in *Engel* did not hold that a claim is groundless if it does not survive a motion to dismiss. In addition, § 13–17–102 states that a court *may* award attorney fees, but is not required to do so. Thus, the trial court abused its discretion in awarding the Osthoffs' request for attorney fees against the Parkers and their attorney jointly and severally.

### C. Merrills' Attorney Fees

After a bench trial, the court further concluded that because the Parkers' claims against the Merrills lacked substantial justification, the Merrills were also entitled to an award of attorney fees. As previously discussed, the Parkers' claims against the Merrills did not lack substantial justification, and thus the trial court also abused its discretion in awarding attorney fees in favor of the Merrills and against the Parkers and their attorney. *See In re Marriage of Paul, supra.*

### D. Appellate Attorney Fees

Based on the above analysis, the Merrills and the Osthoffs are not entitled to attorney fees for pursuing this appeal.

### VI. Garnishment

The Parkers further contend the trial court erred when it issued a writ of garnishment in favor of the Osthoffs before a final judgment had been entered pursuant to C.R.C.P. 54(b). We agree that a writ of garnishment should not have been issued, but for a different reason.

Here, the writ of garnishment was issued for funds owed by the Parkers and their attorney pursuant to the trial court's award of attorney fees in favor of the Osthoffs. Because we have determined that the trial court improperly awarded attorney fees against the Parkers and their attorney, we do not need to decide whether the court erred in issuing the writ of garnishment before it had entered a final judgment. Rather, we conclude that any funds garnished as a result of the improper attorney fee award shall be released from the court registry and returned to the Parkers and their attorney.

### VII. Conclusion

Because of this disposition, we do not address the remaining arguments raised by the parties.

In sum, we affirm the trial court's dismissal of FSA and the court's refusal to remove

the case to federal court. We also affirm the trial court's determination that the Merrills are entitled to the excess funds from the foreclosure sale pursuant to § 38–38–111. However, we reverse the trial court's determination that the Parkers were not entitled to the winter wheat crop harvested by the Osthoffs, subject to any equitable claims the Osthoffs may raise. We further reverse the trial court's denial of the Parkers' request for a judgment for waste based on the Merrills' failure to pay taxes but affirm its denial of a judgment for waste regarding insurance and the interest due on the first and second deeds of trust during the redemption period. We also reverse the trial court's garnishment of the Parkers' and their attorney's bank accounts. Finally, we reverse the trial court's awards of attorney fees in favor of the Merrills and the Osthoffs and against the Parkers and their attorney. We remand this matter for further proceedings consistent with this opinion.

Judge JONES and Judge NEY concur.