[No. 4810.]

THE INTERNATIONAL TRUST COMPANY v. THE KEEFE MANUFACTURING AND INVESTMENT COMPANY.

**Bonds—Surety Bonds—Third Parties Claiming Protection—Annulment by Principal Parties—Effect.**

The board of education of a school district entered into a contract with a builder to erect a school building whereby the latter agreed to pay for all material and labor, and to allow no liens to be filed thereon; and a surety bond was given to insure performance, which was to become annulled on the acceptance of the building. Held, that the board having in good faith ac-

cepted the building before one, who furnished material to a sub-contractor, knew of the existence of the bond or made any claim thereunder or relied upon it, the latter could not enforce it, since the bond became functus officio as to him.—P. 445.

*Error to the County Court of Arapahoe County.*
*Hon. Ben B. Lindsey, Judge.*

Action by The Keefe Manufacturing & Investment Company on a bond against The International Trust Company. From a judgment for plaintiff, defendant brings error.   *Reversed.*

Messrs. MACBETH & MAY, Messrs. BENEDICT & PHELPS, and Messrs. DOUD & FOWLER, for plaintiff in error.

Mr. F. A. WILLIAMS, for defendant in error.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

The board of education of school district No. 1 in Arapahoe county entered into a contract with W. E. Towers whereby he agreed to build a public school building for a named consideration according to certain plans and specifications, to pay all artisans, material men and laborers doing work on or about the building, and that no liens should be filed thereon. At the same time Towers, as principal, and The International Trust Company, as surety, gave to the board a bond, the condition of which was that if Towers performed all of his promises and agreements contained in the contract, the bond would be void, otherwise it was to remain in force.

Towers sublet the brick work upon the building to Charles H. Smith, and Smith made a contract with The Keefe Manufacturing and Investment Company for furnishing the brick to him. Towers paid Smith

all that was coming to him under the contract. Smith did not pay the Keefe company for all the brick which it furnished, the balance due being about $1,600. The building was accepted by the board in December, 1901, and the board paid Towers the entire balance due him May 12, 1902. The bond expressly provided that it should be annulled on the acceptance of the building by the board.

On the failure of Smith to pay to it the balance due, the Keefe company, May 28, 1902, brought this action against The International Trust Company, as surety on the bond, to recover the same, and alleged in its complaint, in addition to the foregoing facts, that, relying upon this bond, the plaintiff furnished and delivered the brick to Smith. The answer of the surety company denied that plaintiff relied upon this bond in furnishing brick, and as a separate defense alleged that prior to the assertion of any claim or demand by plaintiff against Towers or the board or the defendant surety company, the board accepted the school building in December, 1901, and then canceled and annulled the bond given to it by the defendant, and thereby released and discharged the defendant from all liability.

It will be observed that this action was instituted after the annulment and cancellation of the bond, and after the final payment by the board of the balance due Towers under his contract. There was no evidence by plaintiff that it furnished the brick in reliance upon the bond. Its allegation to that effect in the complaint was denied by the answer, and, so far as the record discloses, plaintiff made no claim whatever against the defendant under this bond until this action was begun.

The argument of counsel is largely devoted to the meaning of the bond, the plaintiff maintaining that the contract therein was made directly and

primarily for its benefit, and was so intended by the parties, and, therefore, it might sue upon it; the defendant insisting that the bond was given primarily and directly for the benefit of the school board, and while its performance may have incidentally been of benefit to the plaintiff, such was not its primary object according to the intention of the parties.

The rule in this state, as laid down in *Lehow v. Simonton*, 3 Colo. 346; *Green v. Richardson*, 4 Colo. 584; and *Greene v. Morrison*, 5 Colo. 18, is that a third party, for whose benefit a simple contract has been entered into for a valuable consideration moving from the promisee, may maintain an action upon it in his own name. The authorities are not entirely in accord as to whether a bond like this is made for the benefit of third parties, in the sense that they might maintain an action upon it. We are, however, under the facts of this case, relieved of the necessity of determining this important question. We are bound to assume the fact to be, as defendant asserts, that the plaintiff did not rely upon this bond in furnishing the brick to Smith; that it did not know of its existence until it brought this action; and that it never accepted the same while the bond was binding between the parties thereto. It is also true that, while we have approved of the acts of public corporations in thus attempting to protect those who do work upon, and furnish materials for, a public building (*Denver v. Hindry*, ante, p. 42), yet they are not under any legal obligation so to do. Neither is there a claim here that the board was under any legal liability to plaintiff when this bond was executed.

The general rule seems to be that, under such a state of facts, a third person for whose benefit a contract has been made cannot maintain an action upon it if, before he accepts the same, the parties

thereto have rescinded, annulled or canceled it.— 9 Cyc. 386, and authorities cited. A leading case is *Gilbert v. Sanderson,* 56 Iowa 349 (41 Am. Rep. 103). Seevers, J., after observing that under the contract there before the court the plaintiff may have been entitled to its benefits, said:

"Now, before he had knowledge any such contract was in existence, the parties who made it agreed upon a valuable consideration to release the obligation thereby assumed. Having the power to enter into such contract it would seem to follow they could enter into another whereby the former ceased to be of any force or effect, unless in the meantime the person for whose benefit it was made in some manner has indicated he accepts the contract, or it can be implied he did so. By so doing he acquires the rights and assumes the burdens incident thereto."

In *Simpson v. Brown,* 68 N. Y. 355, it was held that a bond and guaranty were discharged by the obligee releasing the same and consenting to a cancellation before the person whom it was intended to secure had acquired rights thereunder.

In *Jones v. Higgins,* 80 Ky. 409, the court said that the parties to such an instrument had the undoubted right to change or abandon the contract before its acceptance by the third party for whose benefit it was made.

In *Trimble v. Strother,* 25 Ohio St. 378, the court held that where the intention is to benefit a third party by a contract, "if he has not been induced to alter his position by relying in good faith on the promise made in his favor," the promisor thereunder is not estopped from setting up against the beneficiary any defense which he could have set up against the enforcement of the promise by the other contracting party.

*Davis v. Calloway,* 30 Ind. 112 (95 Am. Dec. 671), held that until acceptance by the party intended to be benefited, the parties to the contract might rescind it.   See, also, *Jefferson v. Asch,* 53 Minn. 446 (25 L. R. A. 257, notes 10, 11, 12, 13, pp. 265, 266).

In the case at bar, not only is there no evidence that the plaintiff relied upon this bond or accepted it, or in good faith acted as he did because it was given, but we know from the records of this court (*Keefe Mfg. & Inv. Co. v. School District,* 33 Colo. 513) that it unsuccessfully tried to get a judgment against the school district for the balance which Smith owed to plaintiff under this contract.   Our conclusion in this case, however, is not based upon this attempt by plaintiff to secure his claim from the district.

Applying the principle of the foregoing authorities to this case, we say that if the bond on which the defendant was surety was given for plaintiff's benefit, the plaintiff, in acquiring rights thereunder, assumed its burdens and restrictions.   This bond expressly provided that it should be annulled upon the acceptance of the building by the school board.   The board was not legally or equitably liable to plaintiff for this, or any other, claim.   In good faith it accepted the building before the plaintiff knew of the existence of the bond, or made any claim thereunder, or relied upon it.   Thereby the bond became *functus officio* as to the obligee.   Plaintiff, not having then in any way indicated its acceptance of the bond, could not thereafter enforce it.

The judgment of the county court in favor of the plaintiff must, therefore, be reversed.

*Reversed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GABBERT concur.