No. 15,804.

OCHSNER ET AL. *v.* LANGENDORF.
(175 P. [2d] 392)

Decided December 2, 1946.

Mr. ALDEN T. HILL, Mr. LLOYD E. WILLIAMS, for plaintiffs in error.

Mr. L. R. TEMPLE, Mr. ALBERT P. FISCHER, for defendant in error.

*En Banc.*

MR. JUSTICE BAKKE delivered the opinion of the court.

CARL LANGENDORF, defendant in error, plaintiff below, brought an action for possession of certain real estate, of which he was the owner, against the Ochsners who claimed possession for the year 1946 by virtue of an oral assignment of a lease from Henry Moore, who admittedly had an oral lease on the premises for the year 1945. The trial court ruled against the Ochsners, quieted title to the property in, and awarded its possession to, Langendorf. The Ochsners seek reversal on a writ of error and have asked that the matter be decided on their application for supersedeas, and we have elected to so dispose of it.

It appears from the record that in December, 1944, Langendorf gave an oral lease to one Moore for an agreed cash rental of $425 a year. Moore contended that the lease was for one year with the privilege of continuing in possession for two years, provided Langendorf did not sell the property in 1945. Langendorf contends that the lease was for the year 1945 only; that in the event of a sale of the property Moore was to give possession within a reasonable time; and that there was no agreement for 1946. Moore occupied the premises during all of 1945; at the end of the year he had not paid all of the rent for 1945, but January 10, 1946, he sent Langendorf a check for $200 which he says was in payment of rent for the balance of the year 1945 and for the first three months of 1946. There is an alteration of the figures on the check, but it was cashed and the pro-

ceeds thereof retained by Langendorf, who admits having received $525 in rent from Moore. The Ochsners took possession of the place January 12, 1946, and bought Moore's personal property, including a large number of chickens and some cattle. Moore remained with the Ochsners for about a month.

During all of this time Langendorf was working near Laramie, Wyoming; he came down to the leased premises about the middle of February, visited with the Ochsners, and told them the place was to be sold (it had been listed for sale for several years), but nothing was said about their having to surrender possession, and he admits saying to Ochsner, "the way he was going at it he was as good a farmer as I ever had there," and when Ochsner asked him if the rent was $425 a year, Langendorf replied in the affirmative. At this same time the two men walked over a part of the place and there was some discussion of the matters involved, but there is dispute as to what the conversation was. A short time thereafter Ochsner plowed and fertilized some of the land, planted about twelve acres of barley and purchased some more cattle and chickens. He stated that he paid Moore $3,000 for the cattle and chickens and $100 for the assignment of the lease. It was not until March 13, 1946, that Langendorf notified the Ochsners that they would have to vacate the premises by April 1st. On their refusal to do so, this action for possession was instituted, with the result already noted.

While numerous specifications of points are urged for reversal, we deem it necessary to consider only three, viz.: 1. The court erred in holding that there was no lease for 1946; 2. the court erred in holding that Ochsners did not have a valid assignment of the lease; and 3. the court erred in considering the statute of frauds, for the reason that the statute was not pleaded.

1. In view of the undisputed evidence that Langendorf received and accepted the $100 for at least part of the rent for the year 1946, the admitted lease for 1945

continued in effect the following year. As already noted this $100 was paid and accepted January 10, 1946, and we have held that, "By accepting payment of rent after the expiration of the term of the lease the landlord made his election to waive the wrong of holding over, as by the payment the tenant disclosed his purpose to continue the tenancy. Payment on the one hand and receipt on the other made presently manifest the intention of the parties and bound them accordingly." *Wells v. Blystad,* 91 Colo. 346, 14 P. (2d) 1078, and in *Hallett v. Barnett,* 51 Colo. 434, 118 Pac. 972, quoting from *Eppstein v. Kuhn,* 225 Ill. 115, 122, we said, "by accepting payment of a month's rent after the expiration of the term of the lease the landlord makes his election to treat the party as a tenant from year to year, upon the same terms as provided in the original lease." See, also, *Zippar v. Reppy,* 15 Colo. 260, 25 Pac. 164.

The landlord in the case at bar admits that one of the terms of the lease for 1945 was that he would give the tenant a reasonable time to vacate the premises in case the land was sold. We think that the period from March 13 to April 1, was not sufficient time under the presented circumstances. While it is true he told the tenant in February that the place was in process of being sold, no actual notice to vacate on account thereof was given until March 13.

2. As to the validity of the assignment of the lease by Moore to Ochsner, the landlord admits that nothing was ever said to Moore to the effect that the lease was not assignable. In such a situation, the general rule is that a recognized interest in property is assignable. 6 C.J.S., p. 1054, §8. There is some uncertainty in the testimony concerning the actual consideration for the assignment of the lease, but the fact that the Ochsners bought Moore's personal property, moved in and took possession, and the further fact that Moore left the place, supports the conclusion that there was an assignment which

Langendorf recognized, reserving only his alleged right to sell the property.

3. We think the trial court was in error in ruling the assignment was ineffective because of the statute of frauds. The statute was not pleaded nor relied upon. R.C.P. Colo. 8 C (c); *Markley v. Hilkey Bros.,* 113 Colo. 562, 160 P. (2d) 394.

Langendorf contends that the case was decided in the trial court on conflicting evidence, and that therefore we must affirm the judgment. It is true that much of the evidence is in conflict, but as already noted the record discloses sufficient facts, admitted or uncontradicted, to establish the legal propositions requiring a reversal of the judgment.

Judgment reversed.

MR. JUSTICE JACKSON concurs in the result.

MR. CHIEF JUSTICE KNOUS and MR. JUSTICE HILLIARD dissent.

MR. JUSTICE STONE does not participate.