SMITH *v.* CARTER.

4-8566                                    214 S. W. 2d 64

Opinion delivered October 18, 1948.

*C. C. Hollensworth, Aubert Martin* and *J. T. Haley, Jr.,* for appellant.

*DuVal L. Purkins,* for appellee.

SMITH, J. On September 1, 1942, the parties to this litigation executed what is called a Flexible Farm Lease, and in doing so employed a blank contract prepared by the Federal Government which referred to appellee as landlord, and appellant as tenant. It is quite a lengthy document, and when all the blank spaces had been filled it would have constituted a lease and nothing more, except that there was added at the end thereof, the following recital:

"It is agreed that the tenant may purchase this farm for two thousand dollars ($2,000) *and* time during the life of the lease, payments to be made in ten (10) equal annual payments of two hundred dollars ($200) each. If the tenant purchase the farm, any annual rents that have been paid may be counted as payments on farm if enough additional is paid to make any annual payment equal to two hundred dollars ($200)."

The effect of this addition was to convert the contract from an ordinary lease, to a lease with an option to purchase.

It is recited in paragraph two of the lease that "The term of this lease shall be five years from January 1, 1943, to December 31, 1947, and this lease shall continue in effect from year to year thereafter until written notice of termination is given by either party to the other on or before the 1st day of October, before expiration of this lease or any renewal."

Other provisions of the lease relevant to the questions presented on this appeal are found in sub-paragraph (c) of paragraph seven, and in sub-paragraphs (b) and (c) of paragraph eight. Sub-paragraph (c) of paragraph seven provides that the tenant will not commit waste on or damage to the farm, or permit others to do so. Sub-paragraphs (b) and (c) of paragraph eight read as follows:

"(b) The tenant may use dead and unmarketable timber and other timber designated by the landlord for his own fuel, but the tenant shall cut no growing trees of value for fuel or other use and shall market no timber from the farm without the consent of the landlord."

"(c) Willful neglect, failure, or refusal by either party to carry out any material provision of this lease shall give the other party the power to terminate the lease, in addition to the right to compensation for damages suffered by reason of such breach. Such termination shall become effective thirty (30) days after written notice of termination specifying the delinquency has been served on the delinquent party, unless during such thirty (30) day period the delinquent party has made up the delinquency. The landlord shall have the benefit of any summary proceedings provided by law for evicting the tenant upon termination under this paragraph, or at the end of the term."

On November 5, 1946, Carter, the landlord, served on Smith, the tenant, a written notice reading as follows:

"This notice to you, in accordance with the terms of the lease, dated September 1, 1942, entered into by you with the undersigned for the use and occupation (of the leased land) to terminate said lease for willful neglect, failure and refusal on your part to carry out the terms thereof. Some of the terms of said lease which you have violated are:

"1. You have failed to farm the premises in an efficient and husbandlike manner.

"2. You have cut and removed merchantable timber.

"3. You have failed to keep the premises in good repair.

"4. You have failed to maintain the fences as directed.

"5. You have diverted lumber, materials and fence rails wrongfully.

"In many other particulars you have violated the terms of said lease.

"Therefore, this is the thirty-days written notice to you of the termination of said lease in accordance with its terms and unless you comply with said lease or surrender the possession of the lease premises within thirty days from the date of the service of this notice upon you, the undersigned will take action at law to evict you.

"This notice executed on this 5 day of November, 1946, and served upon you on the 5 day of November, 1946."

The tenant responded to this notice by filing a suit for the specific performance of the contract in which he alleged that he had complied with all the terms and conditions of the lease, and prayed that he be granted the right to make the payments of purchase money required by the lease. An answer was filed containing allegations upon which much testimony was offered, which the Chancellor reviewed in the written opinion, evidencing that the testimony was carefully considered. In this opinion findings of fact were made to the effect that the tenant had breached the contract in the respects mentioned in the notice above copied, and it was found that damages to the extent of $100 had been incurred. The opinion reflects that greater damages had been inflicted, but the testimony was not sufficiently definite as to the items thereof to warrant a finding for a larger amount.

The court found that the notice above copied was not an eviction notice, but a notice to repair and compensate damages pursuant to sub-paragraph (c) of paragraph eight above copied. The court further found that appellant did not avail himself of the provisions of this sub-paragraph, but on the contrary denied any damage or any breach of the contract. The court found against this contention and found to the contrary that appellant had breached the contract in several respects, to-wit: by cutting down a plum orchard, by selling merchantable timber, removing and not rebuilding fences, and by failure to cultivate all the land.

Appellant says that the relief prayed, to-wit: specific performance, should be awarded him notwithstand-

ing these facts, for the reason that he now proposes to pay appellee the full purchase price of the land and that if he does so appellee is not entitled to cancel the lease. In support of this contention the case of *Keogh* v. *Peck,* 38 A. L. R. 1151, 316 Ill. 318, 147 N. E. 266, is cited. There a tenant sought to enforce an option to purchase the leased property, which right was resisted upon the ground that the tenant, in violation of the contract, had demolished a building on the land. This was held no defense where the tenant had exercised his option before the forfeiture was declared.

In the instant case the testimony abundantly supports the specific findings of the Chancellor that appellant had breached his contract in several respects, and that he did not attempt to avail himself of the provisions of sub-paragraph (c) of paragraph eight until after the time allowed by that sub-section to repair and compensate the breach had expired.

This is not a suit to enforce a contract to convey land, in which contracts time is not of the essence, unless made so by the contract. It is rather a suit to enforce an option to buy. The option was entirely with the tenant. He was under no obligation to buy. He could do so or not as he pleased, and in such contracts time is of the essence whether the contract expressly so provides or not.

At § 84 of the chapter on Landlord and Tenant, 51 C. J. S., there is a discussion of the right of a tenant in possession under a contract giving him the option to buy, and under the sub-head of "Time to Exercise Option" it is said: "In the exercise of the option, time is of the essence; the court is without discretion to grant additional time, and the lessee cannot extend the prescribed period merely by holding over and paying rent." See, also, *Carpenter* v. *Thornburn,* 76 Ark. 578, 89 S. W. 1047; *Thomas* v. *Johnson,* 78 Ark. 574, 95 S. W. 468; *Grummer* v. *Price,* 101 Ark. 611, 143 S. W. 95; *Bishop* v. *Melton,* 202 Ark. 732, 152 S. W. 2d 299.

Here the court found, and we think the testimony supports the finding, that appellant did not tender com-

pliance in the time and manner required by the contract. The parties differ as to the meaning and proper interpretation of the typewritten addenda herein quoted, providing the time and manner of making payments. Appellee insists that it was agreed that if appellant decided to exercise the option to buy he should have made a cash down payment of $200 and should pay interest on any delayed payment at the rate of ten percent. per annum. We do not agree with this contention, but even so, appellant did not make tender of payment as the contract required.

Appellant testified as to only two tenders. The first was some time after the annual rent of $150 had been paid, which was payable in any event. His wife offered to make a tender of $50 additional which appellee refused, but attached to the tender was the demand that appellee execute a deed and take a deed of trust to secure the balance of the purchase money. The contract did not authorize this demand. Appellee was not required by the contract to execute a conveyance of any kind until the payments had been completed. He did offer to execute a bond for title, but this was not what appellant demanded.

The second tender was made at the end of the five-year period, but this was only $200, with an offer to pay the balance, which tender was not actually made. But even so, the contract had then been breached without offer to repair as sub-paragraph (c) of paragraph eight required.

Appellant insists that appellee waived his right to insist that the contract had been breached. The basis of this insistence is that duing the fourth year of the lease, but before its end, appellee had agreed that appellant might continue to occupy the land under the contract, but appellee insists that when he did so agree, he was unaware of the nature and extent of the breaches of the contract, and that when this was discovered and ascertained, he gave the notice above referred to, which the court designated as a notice to repair, which, as we have said, was not complied with.

The option to buy was of course dependent upon the lease, and if appellant had forfeited his rights thereunder, he necessarily forfeited his option to buy.

The testimony warrants the finding of the court that no offer to repair and pay damages was made until the right to evict had accrued and the judgment must therefore be affirmed, and it is so ordered.