No. 21478.

GEORGE F. STRAUSS *v.* VIRGIL A. BOATRIGHT,
ADMINISTRATOR OF THE ESTATE OF
MERCEDES BONGER, DECEASED.
(418 P.2d 878)

Decided October 10, 1966.

Charles A. Murdock, for plaintiff in error.

Fred W. Varney, Michael C. Villano, for defendant in error.

*In Department.*

Opinion by Mr. Chief Justice Sutton.

This is an action involving title to certain real property in Jefferson County, Colorado, and a claim for rent thereon. The original parties were George F. Strauss, who brought the quiet title action, and Mercedes Bonger,

the tenant in possession and former vendee under a purchase contract, who has died since the trial. Virgil A. Boatright now appears in Bonger's place as the administrator of her estate. We shall refer to the parties by name. The issue for our determination on this writ of error is whether the trial court, which found the title to be in Strauss, could, in effect, continue an expired right to purchase granted Bonger under a lease and option agreement.

The property involved consists of two buildings known by their addresses as 822 and 822½, 16th Street. One was a converted carriage house made into two apartments, and the other was used as a home by Bonger.

The record discloses that Clarence and Rose L. Gould at one time purchased, at a foreclosure sale, Lots 8 and 9, Block 60, in the City of Golden. The Goulds then, by a contract of sale, sold the property to Bonger, the former owner. Later Bonger defaulted and the Goulds proceeded to foreclose on the property. The period of redemption for Bonger was up on September 5, 1962. On August 28, 1962, the Goulds gave one Helen Richie, Bonger's friend who was trying to help her refinance her purchase, an option to purchase the property for $17,798, which option was to be exercised on or before September 5, 1962. On September 6, 1962, Mrs. Richie, not having exercised her option, the Goulds sold the property to Strauss for the same sum conveying by warranty deed. At the same time Bonger and Richie quitclaimed to Strauss. The latter in turn then gave Bonger a written "Lease And Option," the pertinent terms of which were: a one year period, rent to be $250 per month plus an option to purchase *during* the lease term for $17,798 plus attorney's fees and settlement costs. No provision was made for the rent paid to apply on the purchase price. At this point it is well to note that Bonger was under an order to vacate by September 6th when she first approached Strauss on September 5th for the loan hereinafter mentioned.

It appears that Bonger paid the $3,000 rent in cash and by certain credits for repairs but refused to pay rent thereafter; further, that she resisted the quiet title action on the ground that all Strauss could do was foreclose because she asserted that the "Lease And Option" was an equitable mortgage and that this was a security transaction. Bonger's evidence in this regard was that on September 5th she had attempted to borrow money from Strauss to stave off her eviction by Gould; that Strauss told her to procure some co-signers for her note if a loan were to be made and that she had done so; that then, the next day (*i.e.*, on September 6th), he had refused to make her a loan and instead bought the property from the Goulds. She contended, and the trial court agreed, that she should have been given time to buy the property *after* the court found the title to be in Strauss.

■ In other words, Bonger's position is that even though Strauss purchased from a third party, he still had a duty to her to let her purchase because of her financial distress at the time she lost the property to Gould. She claimed in her answer that the rent paid Strauss was an instalment on the agreed purchase price even though the "Lease And Option" did not so provide. We note that she was represented by an attorney at the time she made and signed the contract. The trial court correctly found, in this regard, on ample evidence, that Bonger signed "the instruments of her own free will and accord" and that she was not tricked into the transaction thinking that she was getting a loan.

■ We thus find a trial court order, sustained by the evidence, that Strauss owns the property. And we find that at the time of trial the court held that Bonger was "in default of the lease and option agreement * * *, and that defendant has no right, title and interest at this particular time in it and is hereby ordered to vacate the premises." Yet, the court went on to make an inconsistent additional order granting Bonger from September 9, 1964 to September 30, 1964 to "obtain title to the

property upon payment of the sum of $17,798.00 plus interest * * *. If the defendant does not make that payment by September 30th, then she is to vacate the premises immediately." The court made no order concerning Strauss' claim for damages due to loss of rent. Following entry of the judgment, Bonger deposited $19,000 with the court to comply with the terms of purchase. That part of the order objected to, of course, cannot stand, as there is no support for it in the findings or the evidence, and the trial court is therefore ordered, upon remand, to strike the inconsistent and objectionable part from its judgment.

 A mortgage is a conveyance *by the debtor to his creditor* of property as security for the repayment of a sum of money, the transfer to be void upon repayment on a day certain of the sum loaned plus interest. See 4 *POMEROY'S EQUITY JURISPRUDENCE* § 1191 (5th ed. 1941); 59 C.J.S. *Mortgages* § 9. This record shows that, at the time this transaction was consummated, *i.e.,* on September 6, 1962, Bonger held no interest whatsoever in the property in question, her equitable right of redemption on her contract of purchase from the Goulds having expired September 5th. On September 6th title was in the Goulds and it was transferred to Strauss by them on that date. Since Bonger transferred nothing to Strauss, the trial court correctly held that this was not a security transaction.

 Nor did Bonger receive any continuing rights under the option. It expired with her lease. *Bond v. Long,* 338 Ill. App. 1, 86 N.E.2d 585 (1949), *Andreula v. Slovak Gymnastic Union Sokol Assembly,* 140 N.J. Eq. 171, 53 A.2d 191 (1947), *Spaulding v. Yovino-Young,* 30 Cal.2d 138, 180 P.2d 691 (1947), *Smith v. Carter,* 213 Ark. 937, 214 S.W.2d 64 (1948), 32 Am. Jur., *Landlord and Tenant* § 305. Under the option agreement she was not required to purchase the property. *Smith, supra,* 67 C.J.S., *Option* defined, p. 511. Redemption cases such

as *Fairview Mining Corp. v. American Mines and Smelting Co.,* 86 Colo. 77, 278 Pac. 800 (1929), and *Rocky Mountain Gold Mines, Inc. v. Gold, Silver and Tungsten, Inc.,* 104 Colo. 478, 93 P.2d 973 (1939), relied on by Bonger are not in point under the facts presented. Here there is no application of equitable principles, since this was not a security transaction, for all Strauss wanted was to rid himself of a tenant who refused to vacate after her lease expired.

■ The Arkansas court, in *Bishop v. Melton,* 202 Ark. 732, 152 S.W.2d 299, 301 (1941), considered a case very similar to the one now before us. In that case, Bishop, wishing to purchase the property in question, attempted to borrow the purchase price from Melton. Melton agreed instead to purchase the property and give Bishop a lease and option. Bishop defaulted on rent payments, and later tendered the purchase price. He argued that the agreement in question was in effect a mortgage, even though in the form of a lease and option, and he should be allowed a period of redemption. In refusing this relief, the court held the agreement to be:

" * * * one of landlord and tenant with an option to buy, conditioned upon the tenant's prompt payment of the rents on the first day of each month and other conditions, none of which were performed. * * * the rent payment made and those agreed to be made did not constitute a part of the purchase price and were not to be credited thereon. His right to purchase at all depended upon the performance of the conditions stated. * * * Courts do not make contracts for the parties, and we feel we would have to change this one to grant the appellant the relief prayed."

In *Smith v. Schreiber,* 93 Colo. 497, 499, 27 P.2d 491 (1933), a case similar to the one now before this court, suit for unlawful detainer was held proper. There Smith deeded property in question to Schreiber in exchange for release of a trust deed on the property, an option

to purchase, and possession of the premises for the duration of the option. Smith continued to occupy the premises after the expiration of the term. The court held:

"* * * From March 15, 1932, to March 1, 1933, they (Smiths) were vendees in possession under an option to purchase. Having failed to exercise that option, Schreiber, the vendor, was entitled to proceed against them under the unlawful detainer act."

We turn now to plaintiff's second assignment of error, *i.e.*, the failure to award him damages for Bonger's continued occupation of the premises after the lease expired.

■ Where possession of leased property is wrongfully retained by the lessee after termination of the lease, damages are recoverable against him. *Merkowitz v. Mahoney*, 121 Colo. 38, 215 P.2d 317 (1949), and see C.R.S. 1963, 58-1-4 and 58-1-25. It seems to be well settled that the measure of such damages is the reasonable rental value for the time that possession was wrongfully withheld. *Barlow v. Hoffman*, 103 Colo. 286, 86 P.2d 239 (1938); 32 Am. Jur. *Landlord and Tenant*, § 927.

■ This record shows evidence of certain rentals received by Bonger from her tenants before her death and also the rent she paid under her lease with Strauss. We believe, however, that in order to determine a proper legal rental basis for assessment of damages the trial court should hold a new hearing thereon and allow additional evidence by qualified persons for purposes of determining the reasonable rental value of the premises so that a proper award can be made to Strauss from the date of expiration of the lease. We note in this connection that Strauss, as owner, testified such a rent would be $250 per month, however, the same contract requiring such rental also provided for the now expired option which undoubtedly had some value.

The judgment is reversed and the cause remanded with directions to delete the portion of the judgment allowing a redemption period and to hold a hearing to

determine the reasonable rental value of the property in question from the date of the expiration of the lease.

MR. JUSTICE MOORE and MR. JUSTICE SCHAUER concur.