**FIRST INTERSTATE BANK, Petitioner,**

v.

**TANKTECH, INC., a Colorado corporation, Respondent.**

**No. 92SC738.**

Supreme Court of Colorado,
En Banc.

Dec. 13, 1993.

Burg & Eldredge, David P. Hersh, Jack D. Robinson, Denver, for petitioner.

Krendl Horowitz & Krendl, Jay S. Horowitz, Kim E. Ikeler, Denver, for respondent.

Chief Justice ROVIRA delivered the Opinion of the Court.

We granted certiorari to review the decision of the court of appeals in *Tanktech, Inc. v. First Interstate Bank*, 851 P.2d 174 (Colo.App.1992), which reversed a directed verdict in favor of First Interstate Bank of Denver ("First Interstate"). Applying the landlord/tenant holdover doctrine, the court of appeals remanded the case for a jury determination of whether an implied lease existed between Tanktech, Inc., ("Tanktech") and First Interstate. In so holding, the court adopted the rule that an implied lease based upon the terms of a prior pre-foreclosure lease may be created if the property owner continues to accept monthly payments from the occupant and fails to renounce the earlier lease. For the reasons set forth below, we reverse.

## I

In May, 1987, Tanktech entered into a three-year lease agreement with D & E Investment Company ("D & E") in which Tanktech agreed to lease commercial space in a building owned by D & E. The lease was a standard commercial lease, but also contained a separately negotiated addendum.[1] Two years prior to the above transaction, First Interstate obtained a security interest in the D & E property in the form of a deed of trust to secure a promissory note for money lent to D & E. Subsequently, D & E filed for bankruptcy. The bankruptcy court granted First Interstate relief from the automatic stay to foreclose its security interest in the property. First Interstate commenced foreclosure proceedings and obtained title to the property by a public trustee deed. After obtaining title to the property, First Interstate did not enter into a new lease agreement with Tanktech, but allowed Tanktech to remain on the property in exchange for monthly payments in the same amount that Tanktech paid under its prior lease with D & E. In 1989, a ruptured water pipe caused a flood which damaged Tanktech's personal property.

Tanktech filed suit alleging that (1) First Interstate breached the lease contract because it failed to comply with provisions in the lease requiring the lessor to maintain the building's plumbing in good order and to restore the premises damaged as a result of any casualty, and (2) First Interstate was negligent because it breached its duty of reasonable care in maintaining the structural, mechanical, electrical and plumbing systems in good order and repair. The trial court granted First Interstate's motion for a directed verdict on the contract claims, finding that the foreclosure extinguished the D & E–Tanktech lease and that there was no evidence from which a reasonable juror could find either an implied-in-law or an implied-in-fact contract between Tanktech and First Interstate. The trial court submitted the negligence claim to the jury which returned a verdict in favor of First Interstate.

The court of appeals, applying the landlord/tenant holdover doctrine, found there was enough evidence of an implied lease between Tanktech and First Interstate to submit the issue to the jury. Thus, it reversed the trial court's order granting a directed verdict in favor of First Interstate and remanded with directions.

## II

We granted certiorari to consider two issues. First, whether the court of appeals ruling nullified the clear legislative intent of section 38–39–110, 16A C.R.S. (1982),[2] and second, whether the court of appeals incorrectly adopted as the majority rule in Colorado the proposition that "[a]n implied lease based on the terms of an earlier preforeclosure lease may be created if … the property owner/landlord accepts monthly payments from the tenant and does not renounce the prior agreement."

## A

First Interstate argues that the court of appeals holding that an implied lease may exist under the landlord/tenant holdover doctrine nullifies the legislative intent of section 38–39–110, because the decision can be interpreted to give effect to the terms of a lease which should have been extinguished under the statute.[3]

---

1. The addendum provided, *inter alia,* that the lessor: (1) is responsible for the cost of upkeep and repair of the plumbing system as well as all mechanical, electric, and structural portions of the building, and (2) is responsible for the cost of restoring the premises if any damage to the premises due to fire or other casualty occurred.

2. This statute was repealed and reenacted subsequent to the commencement of this lawsuit as § 38–38–501, 16A C.R.S. (1993 Supp.).

3. After the events in this litigation took place, the Colorado legislature enacted the "omitted party" statute which details how a junior lessor, among others, might survive foreclosure. *See* § 38–38–506(3), 16A C.R.S. (1993 Supp.). As this statute does not apply to the facts in this case, it will not be discussed.

Section 38–39–110, provides that a purchaser of property at a foreclosure sale obtains a deed to the property after the redemption period expires and that

> [u]pon the issuance and delivery of such deed ... title shall vest in the grantee and such title shall be free and clear of all liens and encumbrances recorded or filed subsequent to the recording or filing of the lien on which the sale referred to in this section was based.

§ 38–39–110.

■ The phrase "free and clear" under section 38–39–110, means that title to property "is not incumbered by any liens." *Black's Law Dictionary* 663 (6th ed. 1990); *see also Sant v. Stephens*, 753 P.2d 752, 759 (Colo.1988). Consequently, as a property lessee is considered a lienor under Colorado law, section 38–39–106, 16A C.R.S. (1982),[4] we conclude that upon foreclosure of a senior security interest, any subordinate leases, liens or encumbrances are extinguished once the redemption period has expired under section 38–39–110.[5]

■ While the plain intent of section 38–39–110 is to extinguish all subordinate liens upon foreclosure, *see Fleet Real Estate Funding Corp. v. Koch*, 805 P.2d 1206 (Colo.App.1991), the purpose of this section is to allow a transferee to rely on the state of record title. *See Page v. Fees–Krey, Inc.*, 617 P.2d 1188, 1199 (Colo.1980) (Rovira, J., dissenting) (recording statutes should be liberally construed to promote the underlying purpose of allowing a transferee to rely on the state of record title); *see also* § 38–34–101, 16A C.R.S. (1993 Supp.) (purpose of recording statute is to render titles to real property secure and marketable). Thus, upon foreclosure of the property, pursuant to section 38–39–110, First Interstate received title "free and clear" of the prior lease. However, First Interstate was free to enter into a new lease agreement or new tenancy with Tanktech with identical terms to the pre-foreclosure lease; nonetheless, the prior lease was extinguished and without legal effect.

It is unclear whether the court of appeals considered the D & E–Tanktech lease extinguished. A number of statements in the court of appeals opinion lend credence to First Interstate's argument that the court of appeals did not view the prior lease as automatically extinguished upon foreclosure. For instance, the court of appeals stated that an implied lease may exist based on the terms of the prior lease if Tanktech paid and First Interstate accepted rent and First Interstate failed to renounce the prior lease. Additionally, the court remanded the case for a jury determination of whether First Interstate was aware of the prior lease. *Tanktech, Inc. v. First Interstate Bank*, 851 P.2d 174, 176–77 (Colo.App.1992). If the court of appeals viewed the prior lease as extinguished, it should make no difference whether First Interstate had knowledge of the prior lease; likewise, First Interstate would not have to *renounce* the prior lease because that lease was extinguished upon foreclosure, and thus, no longer existed. This uncertainty regarding whether the court considered the prior lease terminated upon the foreclosure supports First Interstate's contention that the court of appeals decision would give effect to the pre-foreclosure lease between D & E and Tanktech, and thus, bind First Interstate to a lease that had been extinguished by statute. Likewise, if the court of appeals opinion is construed to extend the D & E–Tanktech lease, the purpose of providing a foreclosure-sale purchaser title free and clear of all encumbrances will be frustrated.

Accordingly, because it is unclear whether the court of appeals decision extended and gave effect to the pre-foreclosure D & E–Tanktech lease, or merely found a new lease, we reverse the court of appeals to the extent that it held the pre-foreclosure lease was extended.

---

4. This statute has been reenacted as § 38–38–305, 16A C.R.S. (1993 Supp.).

5. Though Tanktech concedes a junior lease is extinguished upon foreclosure of a senior interest, we granted certiorari to clarify this issue.

## B

Whether the landlord/tenant doctrine of holdover tenancy applies to a situation in which a subordinate lease has been extinguished through proper foreclosure proceedings is an issue of first impression for this court.

■ The operation of the holdover tenancy doctrine in Colorado is well established. A holdover tenant is one who continues in possession of the premises beyond the term of the lease. *Fibreglas Fabricators, Inc. v. Kylberg*, 799 P.2d 371, 378 (Colo.1990). Once a lease expires and the tenant remains in possession of the premises, the landlord may elect to treat the tenant as a trespasser, *Hallett v. Barnett*, 51 Colo. 434, 436, 118 P. 972, 973 (1911), or may waive the wrong of holding over and continue the tenancy. *Ochsner v. Langendorf*, 115 Colo. 453, 456, 175 P.2d 392, 394 (1946); *Mattas Motors, Inc. v. Heritage Homes of Nebraska, Inc.*, 749 P.2d 458, 460 (Colo.App.1987). In the latter case, and in the absence of a new agreement, the law implies a new contract between the parties based upon the same terms and conditions as the expired lease. *Sinclair Refining Co. v. Shakespeare*, 115 Colo. 520, 525, 175 P.2d 389, 392 (1946); *Sears v. Smith*, 3 Colo. 287, 288 (1877). It is also true that the acceptance of rent by a landlord upon expiration of the lease is sufficient to create a holdover tenancy. *See Wells v. Blystad*, 91 Colo. 346, 348, 14 P.2d 1078, 1078–79 (1932) (terms of expired lease were ex-

tended where tenant continued to pay and landlord continued to accept rent).

■ Relying on these general principles, Tanktech argues that the law should imply a lease based upon the terms and conditions of the D & E–Tanktech lease because: (1) First Interstate allowed Tanktech to remain in possession of the premises; (2) Tanktech paid First Interstate the same amount of rent that it paid D & E under the prior lease; and (3) First Interstate failed to repudiate the prior lease. The court of appeals agreed with this argument and remanded the case for a jury determination of whether there was an implied lease.[6]

■ In addition to being successive in time and occupying the same premises as the original lease, all of the Colorado holdover cases involve situations where the landlord and tenant were original parties to the lease. *See, e.g., Ochsner v. Langendorf*, 115 Colo. 453, 175 P.2d 392 (1946); *Sinclair Refining Co. v. Shakespeare*, 115 Colo. 520, 175 P.2d 389 (1946); *Anderson v. Cykler*, 111 Colo. 510, 143 P.2d 687 (1943); *Wells v. Blystad*, 91 Colo. 346, 14 P.2d 1078 (1932); *Hallett v. Barnett*, 51 Colo. 434, 118 P. 972 (1911); *Zippar v. Reppy*, 15 Colo. 260, 25 P. 164 (1890). We have found no cases in which a third participant, not party to the original lease, was bound to the terms of a lease of which it might not be aware[7] and which it had no power to negotiate. Here, there was no prior relationship between Tanktech and First Interstate which would justify binding First In-

6. The court of appeals decision does not distinguish between an implied-in-fact and an implied-in-law contract. Presumably, it was referring to an implied-in-law contract which is imposed by a court for reasons of justice, 1 Samuel Williston, *A Treatise on the Law of Contracts* § 1:6 (Richard A. Lord ed., 4th ed. 1990), whereas an implied-in-fact contract requires a meeting of the minds. *A.R.A. Mfg. Co. v. Cohen*, 654 P.2d 857, 859 (Colo.App.1982). Tanktech implicitly argues in its brief that the court of appeals decision is based on an implied-in-law contract, therefore no meeting of the minds between Tanktech and First Interstate is necessary. Moreover, Tanktech has neither argued to this court that an implied-in-fact contract exists nor cited cases dealing with this issue nor pointed to language in the court of appeals opinion to

suggest it was discussing an implied-in-fact contract. Therefore, this opinion will proceed on the assumption that the court of appeals was referring to the possibility of an implied-in-law contract arising between the parties based upon the terms of the pre-foreclosure lease.

7. The court of appeals found it was not clear whether First Interstate was aware of the lease between D & E and Tanktech prior to the flood and remanded the case for a jury determination of this issue. *Tanktech, Inc. v. First Interstate Bank*, 851 P.2d 174, 177 (Colo.App.1992). However, upon foreclosure the prior lease was extinguished, therefore, it makes no difference whether First Interstate was aware of the lease. *See supra* pp. 118–119.

terstate to the terms of a lease it did not negotiate. Common sense suggests that this is a correct result and that it would be inequitable to bind a party to the terms of a lease in which it had no ability to negotiate favorable or to reject unfavorable terms. Therefore, as the above cases implicitly demonstrate, we now explicitly hold that for the landlord/tenant holdover doctrine to apply, the holdover term must be: (1) successive; (2) on the same premises as the original lease; and (3) between the landlord and tenant who entered into the lease or a grantee or assignee of either of the original parties. *Cf.* 51C C.J.S. *Landlord and Tenant* § 73 (1968) ("[T]he law implies a continuance of the tenancy on the same terms, and subject to the same covenants, as those by which the *parties to the lease bound themselves in the original instrument.*") (emphasis added).

Additionally, in holding that an implied lease may exist based upon the terms of the pre-foreclosure lease, the court of appeals overlooks the distinction between a lease that is extinguished through foreclosure and one that simply expires at the end of the lease period. As discussed above, the holdover doctrine applies when a tenant remains on the premises at the *expiration* of a lease term. *See Wells v. Blystad*, 91 Colo. 346, 348, 14 P.2d 1078, 1078 (1932). In the holdover situation, both parties are aware of the terms of the lease, and in fact, voluntarily entered into the original lease. Thus, if the landlord elects to treat the tenant as a holdover, a court will imply a contract based upon the terms of the original lease of which both parties are aware and to which they have previously consented. In contrast, once a lease is extinguished it is legally nonexistent. *See Webster's Third New International Dictionary* 806 (1986). It follows that upon extinguishment, there are no terms from which a court could imply a new contract.

Here, First Interstate took title to the property free and clear as if the pre-foreclosure D & E–Tanktech lease never existed; therefore, a court could not imply a contract based upon terms that were legally absent. *See McFarland Real Estate Co. v. Joseph Gerardi Hotel Co.*, 202 Mo. 597, 100 S.W. 577, 578 (1907) (court held after foreclosure sale the prior lease was nullified and extinguished as if it had never been executed).

Finally, there is ample support for the position we are adopting in other jurisdictions that have considered this issue. In *Dover Mobile Estates v. Fiber Form Products, Inc.*, 220 Cal.App.3d 1494, 270 Cal. Rptr. 183 (1990), the tenant continued to pay rent per the lease to the foreclosure-sale purchaser. Sometime later, the tenant decided to vacate the premises and gave the purchaser thirty days' written notice. The purchaser argued that the lease had been ratified by the continued payment and acceptance of rent. The court rejected the purchaser's argument that foreclosure should not automatically terminate the lease but should give the purchaser the option of terminating the lease. The court concluded that the foreclosure extinguished the subordinate lease and, in the absence of a new agreement, the payment of monthly rent created a month-to-month tenancy which the tenant could terminate upon thirty days' written notice. *See also Kage v. 1795 Dunn Road, Inc.*, 428 S.W.2d 735, 736 (Mo.1968); *City Bank and Trust Co. of Moberly v. Thomas*, 735 S.W.2d 121, 122 (Mo.Ct.App.1987); *Roosevelt Hotel Corp. v. Williams*, 227 Mo.App. 1063, 56 S.W.2d 801, 802 (1933).[8]

---

**8.** Tanktech tries to distinguish the Missouri cases on two grounds, both of which are unpersuasive. First, it argues that by statute, Missouri law prohibits more than a month-to-month, tenancy unless the tenancy is in writing; thus, a holdover tenancy could never arise because it is implied from the parties' conduct and not upon a written agreement. This argument is incorrect. The statute Tanktech cites deals only with the termination of a tenancy at will, sufferance, or month-to-month, it does not pre- clude a holdover tenancy from arising. In fact, Missouri recognizes a holdover doctrine similar to that of Colorado. *See Kilbourne v. Forester*, 464 S.W.2d 770, 774 (Mo.Ct.App.1970) (noting a tenant who holds over may continue in possession with the landlord's consent or may be ejected by the landlord). Tanktech also contends that in Colorado the foreclosing lender takes title effective as of the date the lender receives the public trustee's deed, therefore, following the foreclosure, the law places the parties in the

The court of appeals cited a number of cases to support its holding, none of which are controlling and all of which are distinguishable. Discussion of the following two cases will suffice. In *Reilly v. Firestone Tire and Rubber Co.*, 764 F.2d 167 (3d Cir.1985), the court, applying Pennsylvania law, remanded the case for a jury determination of whether the parties affirmed the lease either before or after the foreclosure sale. Pennsylvania, however, allows a foreclosure sale purchaser to affirm and bind the lessee to a pre-foreclosure lease. Under Colorado law, the pre-foreclosure lease is extinguished and thus cannot be affirmed. Similarly, in *United Gen. Ins. Agency of Midland, Inc. v. American Nat'l Ins. Co.*, 740 S.W.2d 885, 887 (Tex.Ct. App.1987), the court stated that where a lease is executed subsequent to a mortgage, the purchaser at the foreclosure sale may either terminate the lease or continue it in force with the tenant's consent, but the foreclosure does not of necessity terminate the lease. As noted, under Colorado law, a pre-foreclosure subordinate lease is extinguished upon foreclosure. Though the parties may enter into a whole new agreement with identical terms as that of the extinguished lease, neither party will be bound to the terms of the legally nonexistent lease.

Accordingly, we find that upon the foreclosure of a mortgage or deed of trust all subordinate leases are extinguished and that the landlord/tenant holdover doctrine cannot be used to give effect to the terms of an extinguished lease.

### III

■ Finally, to complete our discussion we must determine what relationship existed between Tanktech and First Interstate subsequent to the foreclosure.

■ After the foreclosure, but prior to the flood, a representative of First Interstate met with the president of Tanktech to discuss Tanktech's remaining on the premises. The trial court found that at this meeting First Interstate's representative agreed to allow Tanktech to continue in possession as a month-to-month tenant in exchange for payments in the same amount that Tanktech paid under the extinguished lease. The trial court also found the parties did not enter a new lease at this time. We defer to findings of fact by the trial court unless clearly erroneous and not supported by the record. *People v. Thomas*, 853 P.2d 1147, 1149 (Colo.1993); *Gebhardt v. Gebhardt*, 198 Colo. 28, 30, 595 P.2d 1048, 1050 (1979).

■ A month-to-month tenancy is a periodic tenancy in which the landlord-tenant relationship continues each month until one of the parties gives notice to terminate the tenancy. *See Restatement (Second) of Property* § 1.5 (1977); 2 Richard R. Powell, *The Law of Real Property* ¶ 223 (Patrick J. Rohan ed., rev. vol. 1993). The parties may expressly create a month-to-month tenancy. Additionally, if the parties enter into a lease of no stated duration, a periodic tenancy is presumed for a period equivalent to that for which rent is paid. *See Restatement (Second) of Property* § 1.5 cmt. d (1977).

We find that by allowing Tanktech to remain on the premises and by accepting monthly payments, First Interstate entered into a month-to-month tenancy with Tanktech, as opposed to a holdover tenancy as Tanktech argues. *See Dover Mobile Estates v. Fiber Form Products, Inc.*, 220 Cal.App.3d 1494, 270 Cal.Rptr. 183, 187 (1990) (court found month-to-month tenancy where subordinate lease was foreclosed even though one of the parties believed the prior lease continued in effect after the foreclosure). Therefore, First Interstate

---

same situation as if the lease expired. In contrast, Tanktech argues that under Missouri law a foreclosing mortgagee takes title effective as of the date the deed of trust was first executed, therefore, all leases are void *ab initio*. This argument misses the mark. Regardless of when a foreclosing purchaser takes title under Colorado law, the title the purchaser receives is free and clear and all subordinate leases are treated as if they never existed.

owes the duty of care of a general landowner and was found not to have breached that duty by a jury.[9]

## IV

We conclude that the D & E–Tanktech lease was extinguished upon foreclosure of First Interstate's security interest and to the extent the court of appeals decision would give effect to the terms of the extinguished lease, it is overruled. Additionally, the landlord/tenant holdover doctrine is not applicable to bind a foreclosure-sale purchaser to the terms of a lease to which it was not a party—though nothing would preclude the parties from entering a new lease with identical terms.

Accordingly, the decision of the court of appeals is reversed and remanded with directions to reinstate the trial court's order granting a directed verdict in favor of First Interstate.

---

9. For this reason, it is unnecessary for us to direct the court of appeals to remand the case to the trial court to determine the effect of the "new" month-to-month tenancy.