Norton BAIN and The Bain Corporation, a Colorado corporation, Plaintiffs–Appellants and Cross–Appellees,

v.

PIONEER PLAZA SHOPPING CENTER LIMITED LIABILITY COMPANY, a Colorado limited liability company; Stum Enterprises, a Colorado general partnership; Elroy E. Stum; Merlyn E. Stum, individually and as trustee for Tammy Lynn Stum Trust, Gretchen Ann Stum Trust, Jennifer Dawn Stum Trust, Heidie Sue Stum Trust, Valerie Lou Stum Trust, and Eric Lewis Stum Trust; Verlyn D. Stum, individually and trustee for Carolyn Eileen Stum Trust, Christine Elaine Stum Trust, and Catherine Ellen Stum Trust; Theolyn Stum Wilson, individually and as Trustee of Andrea Sue Wilson Trust and Melanie Ruth Wilson Trust, Defendants–Appellees and Cross–Appellants.

No. 93CA0814.

Colorado Court of Appeals,
Div. V.

Feb. 9, 1995.

Rehearing Denied March 16, 1995.

Trott, Kunstle & Hughes, James A. Reed, Daniel M. Winograd, P.C., Daniel M. Winograd, Colorado Springs, for plaintiffs-appellants and cross-appellees.

Silverman & Riley, William S. Silverman, Denver, Hendricks, Hendricks & Shakes, P.C., David L. Shakes, Colorado Springs, for defendants-appellees and cross-appellants.

Opinion by Judge DAVIDSON.

In this action for declaratory judgment, defendants, Plaza Shopping Center Limited Liability Company (Pioneer Plaza); Stum Enterprises; Elroy E. Stum; Merlyn E. Stum, individually and as trustee for Tammy Lynn Stum Trust; Gretchen Ann Stum Trust; Jennifer Dawn Stum Trust; Heidie Sue Stum Trust; Valerie Lou Stum Trust; Eric Lewis Stum Trust; Verlyn D. Stum, individually and as trustee for Carolyn Eileen Stum Trust; Christine Elaine Stum Trust; Catherine Ellen Stum Trust; Theolyn Stum Wilson, individually and as Trustee of Andrea Sue Wilson Trust; and Melanie Ruth Wilson Trust, (the Stums) appeal from the summary judgment entered in favor of plaintiffs, Norton Bain and The Bain Corporation. The primary issue in this case is whether the subground lease at a shopping center remained in effect after the master ground lease of the sublessor was terminated. We hold that it did not and, therefore, reverse.

The following facts are undisputed. The Stums own land in Colorado Springs that has been developed into a shopping center. Plaintiffs subleased a portion of that property, pursuant to the terms of a master lease between the Stums and the shopping center developer, and built a liquor store on the site.

The master ground lease between the Stums and the sublessor contained a provision which allowed subtenants an option to obtain, upon their request, an agreement from the Stums that, in the event the master lease should be terminated, the Stums would honor the sublease as if it were a direct lease with them.

This provision, set forth in paragraph 11(b) of the master lease, provides, in pertinent part:

Tenant may sublet the whole or any portion of the premises from time to time without notice or consent of the Landlord. Landlord agrees that upon request of any subtenant, mortgagee or beneficiary of a deed of trust of the premises or any part thereof to which Landlord has subordinated his interest to execute agreements providing that, in the event this lease is cancelled or terminated for any reason whatsoever, any sublease of the premises or any portion thereof will become a direct lease between Landlord and sub-tenant if

such sub-tenant is not then in default under said sublease.

Plaintiffs occupied the site for fifteen years but did not request that the Stums execute a non-disturbance agreement pursuant to paragraph 11(b) during the time the master lease was in effect.

During plaintiffs' subtenancy, Lowell Ing, the successor in interest to the shopping center developer, borrowed money from Seafirst Mortgage Corporation and gave Seafirst a deed of trust on the master leasehold as collateral. Seafirst also entered into a direct and independent agreement with the Stums that permitted Seafirst to enter into a new master lease for the shopping center if the master lease with Ing were to be terminated.

In early 1990, Ing defaulted under the master lease. The Stums served Ing and Seafirst with a notice of default and a 45–day demand for possession in accordance with the provisions of the master lease. Ing failed to cure the default and the Stums served Ing with a statutory demand for possession pursuant to § 13–40–104, C.R.S. (1987 Repl.Vol. 6A) which notified Ing that his tenancy was to be terminated as of the third day following service of this demand.

Ing failed to cure the default within three days of the demand and the master lease was terminated as of May 24, 1990.

The Stums then filed an unlawful detainer action to recover possession. After possession was restored to the Stums, the property was placed into receivership pending disposition of Seafirst's right to enter into a new lease.

Seafirst assigned its right to enter into a new lease to a third party who then assigned that right to Pioneer Plaza. Pioneer Plaza subsequently negotiated a new master lease with the Stums.

In August 1990, for the first time, plaintiffs requested that the Stums recognize the sublease as a direct lease pursuant to paragraph 11(b). The Stums denied this request.

Because plaintiffs did not have a non-disturbance agreement with the Stums, Pioneer Plaza notified plaintiffs that they were tenants at will.

Plaintiffs filed suit against the Stums and Pioneer Plaza requesting a declaratory judgment that the sublease was still in full force and effect.

When considering plaintiffs' subsequent motion for summary judgment, the trial court ruled that because paragraph 11(b) of the master lease gave plaintiffs the right to request a non-disturbance agreement, and because it was silent as to the time in which a non-disturbance agreement must be requested, a reasonable time must be implied. The trial court then found that the August 1990 demand for a non-disturbance agreement was made within a reasonable time and entered judgment in favor of plaintiffs.

## I.

Defendants argue that the trial court erred in granting summary judgment in favor of plaintiffs because, by the plain terms of the master lease, no direct lease with the Stums was to arise unless a non-disturbance agreement was requested before the master lease was terminated. We agree.

## A.

The construction of an unambiguous lease is an issue of law; accordingly, this court is not bound by the trial court's conclusions and must construe the lease according to the general rules applicable to written instruments. *See Collins v. Shanahan,* 34 Colo.App. 82, 523 P.2d 999 (1994), *aff'd in part & rev'd in part on other grounds,* 189 Colo. 169, 539 P.2d 1261 (1975). The intention of the parties to the lease controls, and such intention ordinarily should be determined in the light of good sense and the plain understanding of the words used. *See Charles Ilfeld Co. v. Taylor,* 156 Colo. 204, 397 P.2d 748 (1964).

In its order, the trial court apparently interpreted paragraph 11(b) as establishing the termination of the master lease as the event which triggered plaintiffs' right to request a non-disturbance agreement. We do not agree with this construction.

To the contrary, according to the plain language of paragraph 11(b), a request by a sublessee is the event which would trigger the Stums' duty to "execute agreements providing that, in the event [the master lease] is terminated," the sublease would become a direct lease. By this clear language, the request must precede the termination of the master lease.

Thus, even if we assume that the trial court was correct in concluding that, because paragraph 11(b) is silent as to time, a reasonable time must be implied, this reasonable time period necessarily expires when the master lease expires or is terminated. "[O]nce a lease is extinguished it is legally nonexistent." *First Interstate Bank v. Tanktech, Inc.*, 864 P.2d 116, 121 (Colo.1993).

Therefore, after the master lease was terminated, all of its provisions were terminated as well, including the offer to execute a non-disturbance agreement. *Cf. Aigner v. Cowell Sales Co.*, 660 P.2d 907 (Colo.1983) (unless the parties have agreed otherwise, once a lease has been terminated, the landlord may no longer rely upon the lease terms to collect rent after tenant has quit the premises.); *Strauss v. Boatright*, 160 Colo. 581, 418 P.2d 878 (1966) (option to purchase contained in lease expired at the time the lease expired).

### B.

■ Plaintiffs contend, however, that because they are third-party beneficiaries of paragraph 11(b), it survives the termination of the master lease. We disagree.

■ As direct third-party beneficiaries of paragraph 11(b), plaintiffs have a right to enforce its provisions. *See E.B. Roberts Construction Co. v. Concrete Contractors, Inc.*, 704 P.2d 859 (Colo.1985). A third-party beneficiary, however, may not enforce contract provisions entered into for its benefit if, prior to its acceptance by the third party, the contract is annulled, rescinded, or cancelled by the direct parties to the contract. *International Trust Co. v. Keefe Manufacturing & Investment Co.*, 40 Colo. 440, 91 P. 915 (1907); *cf. Jorgensen v. St. Paul Fire & Marine Insurance Co.*, 158 Colo. 466, 408 P.2d 66 (1965) (third-party beneficiaries of

liability insurance contract could not enforce the contract as to injuries which occurred after the contract had been terminated by insurer).

Plaintiffs had the entire life of the master lease, almost fifteen years, in which to determine whether they wished to invoke paragraph 11(b) and obtain the protection afforded by a non-disturbance agreement. The request for such an agreement after the master lease was terminated was untimely as a matter of law and, thus, ineffective. *See Bennett's, Inc. v. Krogh*, 115 Colo. 18, 168 P.2d 554 (1946) (delay which is indisputably beyond the time permitted by proper construction of a contract is unreasonable as a matter of law).

Because plaintiffs did not have a non-disturbance agreement which would allow the sublease to become a direct lease with the Stums upon termination of the master lease, their sublease also terminated. *See V.O.B. Co. v. Hang It Up, Inc.*, 691 P.2d 1157 (Colo. App.1984).

### II.

Plaintiffs contend that, regardless of whether the master lease terminated prior to their request for a non-disturbance agreement, because the Stums and the shopping center developer induced plaintiffs to rely to their detriment upon paragraph 11(b), it may not be altered or terminated without their consent, and thus, it survived the termination of the master lease. We reject this contention for several reasons.

### A.

■ According to Restatement (Second) of Contracts § 311 (1981), if a third-party beneficiary justifiably changes position in reliance upon a promise, the right of the parties to the contract to modify or discharge that promise is cut off. *See Jardel Enterprises, Inc. v. Triconsultants, Inc.*, 770 P.2d 1301 (Colo.App.1988).

By its plain terms, however, paragraph 11(b) is clearly not self-executing. No conversion to a direct lease would occur unless plaintiffs had previously requested that the Stums execute a non-disturbance agreement.

As discussed, plaintiffs did not request a non-disturbance agreement prior to termination of the master lease. Consequently, if plaintiffs relied upon paragraph 11(b) to be self-executing in the event of termination of the master lease, this reliance was unreasonable as a matter of law. *Cf. P–W Investments, Inc. v. City of Westminster,* 655 P.2d 1365 (Colo.1982) (reliance upon issuance of water and sewer tap permits as indication that such services would be available indefinitely into the future was clearly unreasonable).

### B.

Additionally, we reject plaintiffs' contentions that the Stums have attempted to alter the terms of paragraph 11(b) by refusing to recognize their request for a direct lease.

It is undisputed that the offer to execute a non-disturbance agreement remained open throughout the nearly fifteen year life of the master lease. Nothing in paragraph 11(b) indicates that the offer survives the termination of the master lease. Because the offer remained unaccepted by plaintiffs, it terminated along with the rest of the master lease.

### III.

Alternatively, plaintiffs contend that, even if paragraph 11(b) must be construed to require that a request for a non-disturbance agreement be made prior to the termination of the master lease, the master lease was not terminated at the time they made their request.

Specifically, plaintiffs argue that because of procedural defects in the Stums' action in unlawful detainer, the master lease was never terminated and remains in effect. Again, we do not agree.

■ Even if we assume, *arguendo,* that plaintiffs have standing to raise this procedural question, *see V.O.B. Co. v. Hang It Up, Inc., supra; Summit Foods, Inc. v. Greyhound Food Management, Inc.,* 752 F.Supp. 363 (D.Colo.1990), the right of a lessor to take action pursuant to statute for possession is cumulative and independent of the right to terminate the lease for violations thereof.

*See Union Oil Co. v. Lindauer,* 131 Colo. 138, 280 P.2d 444 (1955).

■ A notice to cure default or quit the premises constitutes an election by the lessor to terminate the lease unless the notice is rendered ineffective by the tenant's cure within the time prescribed by the notice. *See Aigner v. Cowell Sales Co., supra; Barlow v. Hoffman,* 103 Colo. 286, 86 P.2d 239 (1938). Subsequent invalidation of an action in unlawful detainer on procedural grounds will not undo the termination of the lease which occurred upon service of the notice and demand. *See Barlow v. Hoffman, supra.*

Accordingly, the master lease was terminated upon service of the notice to cure or quit independent of any alleged procedural irregularities, as confirmed by later court order in the unlawful detainer action.

### IV.

Plaintiffs also argue that paragraph 17 of their sublease contains a non-disturbance agreement binding upon Pioneer Plaza as successor in interest to Seafirst.

Paragraph 17 of plaintiffs' sublease provides that:

> Lessee hereby agrees that its leasehold interest hereunder is subordinate to any mortgage now on, or hereafter to be placed on, the premises leased hereunder; provided, as a condition precedent to such subordination, each such mortgagee shall expressly covenant or each such mortgage shall expressly provide that so long as the Lessee is not in default under said Lease Agreement, the Lessee's quiet possession of the portion of the premises leased hereunder shall remain undisturbed, on the terms and conditions stated herein, whether or not the mortgage is in default or other action brought by the holder of the mortgage in connection therewith.

Because Seafirst held a mortgage on the master leasehold, and because Pioneer Plaza is a successor in interest to Seafirst, plaintiffs argue that Pioneer Plaza must honor the terms of this subordination agreement. We disagree.

The new master lease expressly provides that it is not an assumption or revival of the original master lease and that Pioneer Plaza does not assume, ratify, recognize, or affirm any subleases previously entered into by prior tenants.

More importantly, Seafirst did not receive the right to enter into a new master lease with the Stums by virtue of its position as mortgagee of the leased premises. Seafirst's deed of trust was eliminated by termination of the master lease. It received the right to enter into a new master lease pursuant to an independent agreement with the Stums. Consequently, Pioneer Plaza is not bound by the subordination agreement in plaintiffs' sublease.

### V.

Because the trial court erred in entering summary judgment in favor of plaintiffs based upon the terms of the master lease, and because plaintiffs are not entitled to summary judgment under any of the alternative theories which they have posited, the judgment in their favor must be reversed.

Further, because the parties agree that there remains no undisputed issue of material fact, the matter will be remanded to the trial court with directions to enter judgment in favor of the Stums and Pioneer. *See Haselden–Langley Constructors, Inc. v. D.E. Farr & Associates, Inc.*, 676 P.2d 709 (Colo. App.1983).

### VI.

Because of our resolution of the issue raised by defendants, we need not address plaintiffs' argument that they are entitled to attorney fees as the prevailing party under their sublease.

The judgment in favor of plaintiffs is reversed, and the cause is remanded for entry of judgment in favor of defendants.

ROTHENBERG and KAPELKE, JJ., concur.